1998 ME 212

**STATE of Maine**

v.

**Donna MacDONALD.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 29, 1998.
Decided Aug. 17, 1998.

David W. Crook, Dist. Atty., Alan P. Kelley, Asst. Dist. Atty., Augusta, for State.

Ronald W. Bourget, Bourget & Bourget, P.A., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

DANA, Justice.

[¶ 1] Donna MacDonald appeals from the judgment entered in the Superior Court (Kennebec County, *Alexander. J.*) after a jury trial convicting her of arson (Class A) pursuant to 17–A M.R.S.A. § 802 (1983 & Supp.1997).[1] MacDonald contends that the court erred by excluding the testimony of her expert witness, that the prosecutor made inappropriate comments during closing argument, and that the sentence imposed upon her is excessive. Finding no error with respect to the court's handling of the evidentiary issue and concluding that the prosecutor's comments were not inappropriate, we affirm the judgment of conviction. We do find, however, that the court exceeded the bounds of its discretion by not considering MacDonald's conduct immediately after she set the fire as a mitigating factor when individualizing her sentence, and therefore vacate the sentence.

[¶ 2] MacDonald was indicted for arson in August 1994 in connection with a fire in her residence in May of that year. The fire caused extensive damage to her apartment and several other apartments in the building. MacDonald did not testify at her trial. The State, however, introduced in evidence her affidavit made the day after the fire. In the affidavit MacDonald admitted that she set fire to a bed in one of the apartment's bedrooms. She also stated that she attempted to put the fire out, she did not intend to harm anyone, and she was sorry.

[¶ 3] Sharon Dolloff, who lived in the apartment with MacDonald and MacDonald's

---

1. 17–A M.R.S.A. § 802 (1983 & Supp.1997) provides in part:

    1. A person is guilty of arson if he starts, causes, or maintains a fire or explosion;

    ....

    B. On his own property or the property of another

    ....

    (2) which recklessly endangers any person or the property of another.

    3. Arson is a Class A crime.

adolescent son, testified that both she and MacDonald had been drinking and had a disagreement prior to the fire. She also testified that she was asleep in the bed when it was ignited. She awoke to MacDonald attempting to pull her out of the bed and telling her that there was a fire. Dolloff stated that she, MacDonald, and MacDonald's son, attempted to put the fire out. MacDonald's son testified that MacDonald alerted him to the fire.

[¶ 4] Dr. Donald Devine, MacDonald's proposed expert witness, was examined outside the presence of the jury. He testified that MacDonald suffered from a form of post-traumatic stress disorder (PTSD) he called "adult children of alcoholics syndrome," that he believed made it more likely MacDonald would confess to a crime she did not commit, especially to protect other people about whom she cared.[2] He stated that MacDonald told him that she wanted to protect Dolloff and her son. Devine acknowledged that the adult children of alcoholics syndrome is not recognized in the Diagnostic and Statistical Manual of Mental Disorders (DSM–IV), that he had not conducted any studies on people with PTSD or adult children of alcoholics syndrome to determine whether they were more likely than most people to make false confessions, and that he was aware of no studies by other mental health professionals that would support that contention. Rather, he stated that his conclusion concerning the likelihood that MacDonald would lie to protect others was based on his clinical experience as a counselor in an in-patient substance abuse program. He acknowledged, however, that it was not unusual for people to lie to protect others they cared about, and that such behavior was not indicative of mental illness.

[¶ 5] The court sustained the State's objection to the admission of Devine's testimony, noting that it was questionable whether the adult children of alcoholics syndrome existed. Further the court acknowledged the absence of any studies that would support Devine's contention that people afflicted with PTSD or adult children of alcoholics syndrome would be more likely to confess falsely. The court reasoned that Devine's testimony would not be helpful to the jury in assessing the credibility of MacDonald's confession and that it was within the jurors' common knowledge that someone might falsely confess to protect a loved one. The court concluded that Devine's testimony was not "sufficiently based in expertise that could be helpful to the jury to justify its admission under 702 where there are no studies to support this claim and where the tie to P.T.S.D . . . . is very tenuous."[3]

[¶ 6] The jury found MacDonald guilty of arson. The prosecution recommended a sentence of "twenty years with all but eighteen suspended and a period of probation." At the sentencing hearing several people spoke on her behalf. Dolloff spoke, noting the efforts MacDonald made to stop the fire and crediting MacDonald with saving her life. Following the hearing, the court stated, "I think this is one of the most heinous types of arson that could be committed, a crime involving an act designed to essentially light a person on fire while they were sleeping by lighting the bed in which they were either sleeping or passed out." The court set MacDonald's basic period of incarceration at 25 years. Turning to the second sentencing step the court concluded that aggravating and mitigating factors specific to MacDonald were in equipoise, leaving the sentence indi-

2. Devine acknowledged that he did not mention PTSD in the written psychological evaluation he prepared for MacDonald. Although he testified that MacDonald met several of the diagnostic criteria for PTSD outlined in the Diagnostic and Statistical Manual of Mental Disorders, two or more of which must be satisfied to support a PTSD diagnosis, he acknowledged that there was no reference in his evaluation of MacDonald having satisfied any of those criteria. The court mentioned this deficiency of Devine's report as support for its exclusion of his testimony pursuant to M.R. Evid. 702.

3. The court also concluded that, "even if it was potentially admissible under 702, under 403 its primary effect is not to affect credibility but to get it before the jury where it's more likely prejudicial than probative under 403." Finally, the court concluded that it would not "normally [be] allowed under 404." Because we find that the testimony was properly excluded pursuant to Rule 702, we need not address the propriety of the court's ruling with respect to Rules 403 and 404.

vidualized at 25 years. Noting that this was not a situation when a defendant had set several fires, and that Dolloff had come forward to support MacDonald, the court suspended all but 15 years, to be followed by six years of probation.

### Exclusion of Proffered Expert Testimony

[¶ 7] We review the trial court's decision to exclude evidence for an abuse of discretion or clear error. *State v. Mazerolle,* 614 A.2d 68, 71 (Me.1992). The trial judge "may exclude an expert's opinion under M.R. Evid. 702 if he finds that it would not be within the expert's specialized knowledge or would not be helpful to the jury." *State v. Tellier,* 526 A.2d 941, 943 (Me.1987); *see also* Field & Murray, *Maine Evidence* § 702.1 at 336 (4th ed.1997) ("the trial judge must make a discretionary determination that there is sufficient scientific basis to the proposed expert testimony so that hearing it would be helpful to the jury"). Construing the identical federal counterpart to the Maine rule,[4] the Supreme Court of the United States has stated, "The subject of an expert's testimony must be 'scientific ... knowledge.' The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 589–90, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (footnote omitted).

[3] [¶ 8] Devine acknowledged that his adult children of alcoholics syndrome diagnosis was not recognized by the definitive treatise on psychological diagnoses, the DSM–IV. Further, his proffered opinion concerning the likelihood of false confessions was, by his own admission, based only on his empirical observations. He acknowledged both the complete lack of published studies by other mental health professionals supporting his false confession hypothesis and the fact that he had not conducted any studies on the subject.

[¶ 9] Although the lack of published studies is not a dispositive consideration when assessing the validity of a proffered scientific theory, it is a relevant consideration. *Id.* at 594, 113 S.Ct. 2786. The *Daubert* Court stated, "[S]ubmission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected." *Id.* at 593, 113 S.Ct. 2786 (citation omitted). Thus, the court could reasonably could have concluded that Devine's proffered testimony had little value as scientific knowledge because, having not been derived through the methods and procedures of science nor subjected to peer review, it amounted to little more than Devine's subjective opinion.

[¶ 10] Further, as we have noted previously, "Impressions gleaned from clinical experience or individual case studies concerning the possibility of false [testimony], offer no inherent advantage over the knowledge possessed by ordinary lay people." *State v. Gordius,* 544 A.2d 309, 311 (Me.1988) (citations omitted); *see also State v. Mazerolle,* 614 A.2d at 71 (jurors in a gross sexual misconduct case capable of drawing their own conclusions about the believability of children's accusations without an expert's testimony that children might fabricate such accusations); *State v. Fernald,* 397 A.2d 194, 197 (Me.1979) (jury capable of making its own assessment of the reliability of eyewitness testimony without the need of expert testimony concerning the effect of stress on perception). Given the dubious scientific basis for Devine's proffered testimony, the court reasonably could have concluded that this testimony would do little more than reinforce a concept already well within the jurors' grasps, namely, that people sometimes lie to protect others close to them. That testimony, therefore, would not be helpful to the jury. *See* FIELD & MURRAY § 702.1 at 335 ("The judge must consider whether the matter is beyond common knowledge so that

---

4. Both M.R. Evid. 702 and Fed.R.Evid. 702 provide:

    If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in

issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

the untrained layperson will not be able to determine it intelligently and whether a person with specialized knowledge can give a helpful opinion.")

[¶ 11] The court neither erred nor acted outside its discretion in excluding Devine's testimony pursuant to Rule 702. Moreover, given the dearth of scientific support for and the questionable value to the jury of Devine's proffered testimony, the court performed appropriately the role imposed on it by that Rule.

### Closing Argument

[¶ 12] MacDonald contends that the prosecutor made improper remarks during closing argument. Our review of the record discloses no merit to this contention. MacDonald did not object to the prosecutor's remarks at trial, and, reviewing for obvious error, we cannot say that the allegedly inappropriate comments were "so highly prejudicial that [they] taint[ed] the proceedings and virtually deprive[d] the defendant of a fair trial." *State v. Weisbrode*, 653 A.2d 411, 415 (Me.1995) (citation omitted).

### Appeal of Sentence

[¶ 13] MacDonald appeals the sentence on two grounds. She contends that the court erred by characterizing her crime as among the most serious arsons, warranting a basic period of incarceration in the elevated range

of 20 to 40 years, and it erred with respect to its assessment of mitigating and aggravating factors.

[¶ 14] We have described the sentencing process as follows:

In the three-step process of sentencing, the trial court first determines the basic period of incarceration by reference to the offender's criminal conduct in committing the crime.... The second step in the sentencing process is to individualize the basic period of incarceration to determine the maximum period of incarceration based on those aggravating and mitigating factors peculiar to the specific offender. As the final step, the court may then suspend a portion of the maximum period of incarceration for placement of the offender on supervised probation.

*State v. Bolduc*, 638 A.2d 725, 727 (Me.1994) (citations omitted).[5]

[¶ 15] When the defendant has been convicted of a Class A crime, the court must engage in an additional preliminary step to determine whether the crime falls within the higher tier of Class A sentences. "Of all Class A offenses, only the most heinous and violent crimes committed against a person are punishable by a maximum period of incarceration above the original [20–year] limit." *State v. Hewey*, 622 A.2d 1151, 1155 (Me.1993) (quotations and citation omitted).[6]

---

**5.** Subsequent to MacDonald's offense, the Legislature enacted 17–A M.R.S.A. § 1252–C (Supp. 1997), which provides,

In imposing a sentencing alternative pursuant to section 1152 that includes a term of imprisonment relative to murder, a Class A, Class B or Class C crime, in setting the appropriate length of that term as well as any unsuspended portion of that term accompanied by a period of probation, the court shall employ the following 3–step process:

**1.** The court shall first determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender.

**2.** The court shall next determine the maximum period of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case. These sentencing factors include, but are not limited to, the character of the offender and the offender's criminal history, the effect of the offense on the victim and the protection of the public interest.

**3.** The court shall finally determine what portion, if any, of the maximum period of imprisonment should be suspended and, if a suspension order is to be entered, determine the appropriate period of probation to accompany that suspension.

See P.L.1995, c. 69, § 1. *See State v. Cunningham*, 1998 ME 167, ¶ 5, 715 A.2d 156.

**6.** Subsequent to MacDonald's offense, the Legislature enacted 17–A M.R.S.A. § 1252(2)(A) (Supp.1997), which provides,

In the case of a Class A crime, the court shall set a definite period not to exceed 40 years. The court may consider a serious criminal history of the defendant and impose a maximum period of incarceration in excess of 20 years based on either the nature and seriousness of the crime alone or on the nature and seriousness of the crime coupled with the serious criminal history of the defendant[.]

*See* P.L.1995, ch. 473, § 1.

We review the sentencing court's determination of the defendant's basic period of incarceration or term of imprisonment for misapplication of principle. *Id.* We have stated,

> [I]n reaching its determination the trial court is to compare the defendant's conduct on a scale of seriousness against all possible means of committing the crime in order to determine which acts deserve the most punishment, and the basic period of incarceration imposed for similar conduct of other offenders convicted of offenses within the same classification.

*State v. Ardolino,* 1997 ME 141, ¶ 24, 697 A.2d 73, 81 (citations and quotation omitted).

[¶ 16] The court took a focused view of MacDonald's crime, labeling as "one of the most heinous types of arson that could be committed" the lighting on fire of a person's bed while that person was asleep in it. The court did not err in principle in setting the basic term of imprisonment. MacDonald's conduct could be considered more heinous than, for example, the act of setting fire to an occupied building. Such a view, however, fails to take into account the full course of MacDonald's conduct at the time of the arson. Indeed she did light Dolloff's bed on fire. Almost immediately, however, she also awoke Dolloff, telling her of the fire and pulling her from the burning mattress. MacDonald then alerted her son to the fire and proceeded to attempt to put the fire out.

[¶ 17] The court erred in completely disregarding such conduct as part of the analysis under the second step of the sentencing process—individualizing the basic term of imprisonment based on those aggravating and mitigating factors peculiar to the specific offender. We review the sentencing court's assessment of mitigating and aggravating factors for an abuse of discretion. *State v. Lilley,* 624 A.2d 935, 936 (Me.1993). "Such abuse may occur when a material factor deserving significant weight is ignored...." *West Point–Pepperell v. State Tax Assessor,* 1997 ME 58, ¶ 7, 691 A.2d 1211, 1213.

[¶ 18] The sentencing court noted MacDonald's minor criminal history, including one felony conviction nearly thirty years ago, and her lengthy and unsuccessful struggle with substance abuse as aggravating factors. In regard to mitigating factors, the court acknowledged her good reputation at work and her efforts to raise her son, and it characterized her as a productive member of society. The court then concluded that these factors balanced each other out, thus leaving her individualized maximum period of imprisonment at 25 years.

[¶ 19] No consideration was given to MacDonald's conduct in immediately pulling Dolloff from harms way, alerting her son and Dolloff to the danger, sending her son to alert others in the building and to get help, and attempting to put the fire out. Because the court did not take account of these factors in any way, presumably MacDonald's sentence would have been the same had she done none of these things after having set the fire, and simply left the apartment without raising an alarm. Given the great significance of MacDonald's actions after having set the fire—for surely without those efforts greater harm almost certainly would have occurred—at the very least we must conclude that the sentencing court exceeded the bounds of its discretion by not considering those actions as mitigating factors as required by 17–A M.R.S.A. § 1252–C(2).

[¶ 20] An appropriate sentence must take into account MacDonald's nearly instantaneous efforts to minimize the harm resulting from her criminal act. Otherwise, the conclusion is inescapable that MacDonald would receive no greater punishment had she abandoned her victims and slipped silently away after setting the fire. A sentence that disregards those crucial actions on MacDonald's part must be vacated.

The entry is:

Judgment affirmed. Sentence vacated. Remanded to the Superior Court for resentencing consistent with the opinion herein.