1999 ME 39

**STATE of Maine**

v.

**Jason POULLIOT.**

Supreme Judicial Court of Maine.

Argued Feb. 3, 1999.
Decided Feb. 23, 1999.

Andrew Ketterer, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), William R. Stokes, Asst. Atty. Gen., Augusta, for State.

Peter B. Bickerman (orally), Verrill & Dana, LLP, Augusta (on appeal), David A. Cloutier, Augusta (at trial), for defendant.

Before WATHEN, C.J., and RUDMAN, DANA, and SAUFLEY, JJ.

RUDMAN, J.

[¶ 1] Jason Poulliot appeals from the judgments entered in the Superior Court (Kennebec County, *Delahanty, J.*) on jury verdicts of conviction for attempted murder[1] and aggravated assault[2] and from the bind-over order of the District Court (Waterville, *Gunther, J.*), sitting as the Juvenile Court.

Poulliot contends that: (1) the Juvenile Court erroneously bound him over to be tried as an adult; (2) the trial court erroneously excluded his proposed expert testimony; (3) the trial court erroneously allowed his retrial on the attempted murder charge; (4) the trial court erroneously refused to give the jury instructions he requested; and (5) the evidence was insufficient to convict him of attempted murder. We disagree and affirm the judgments.

[¶ 2] The juries would have been justified in finding the following facts. On October 30, 1994, two groups of young men angrily confronted each other in Oakland. Some of them were armed, but no weapons were used and no blows were struck. One of the two groups, which included sixteen-and-a-half-year-old Jason Poulliot, left Oakland and drove to Fairfield for reinforcements. In Fairfield, Poulliot retrieved his .30–.30 rifle from his grandmother's house. He and his group then returned to Oakland in two vehicles, a Pontiac Sunbird and a pickup. Poulliot sat in the front passenger seat of the Sunbird.

[¶ 3] In Oakland, Poulliot's group drove by several members of the other group, who had congregated around a Chevrolet Nova that Aaron Mullen owned. Mullen had not been involved in the earlier confrontation, but his friends had told him of it. When the Sunbird and pickup drove by a second time, Mullen and his friends got into the Nova and drove off in pursuit. The chase reached high speeds, and eventually the Nova passed both the pickup and the Sunbird. The pickup then passed the Sunbird, and contact occurred between the front bumper of the pick-

---

1. 17-A M.R.S.A. § 152(1) (1983) provides:
   § 152. Attempt
   1. A person is guilty of criminal attempt if, acting with the kind of culpability required for the commission of the crime, and with the intent to complete the commission of the crime, he engages in conduct which, in fact, constitutes a substantial step toward its commission. A substantial step is any conduct which goes beyond mere preparation and is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime.
   17-A M.R.S.A. § 201(1) (1983) provides, in pertinent part:

§ 201. Murder
1. A person is guilty of murder if:
   A. He intentionally or knowingly causes the death of another human being . . . .

2. 17-A M.R.S.A. § 208(1) (1983) provides, in pertinent part:

§ 208. Aggravated assault
1. A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:
   . . . .
   B. Bodily injury to another with use of a dangerous weapon . . . .

up and the rear bumper of the Nova. Suddenly, Mullen brought the Nova to a stop in the travel lane of Route 23. He stepped out and walked toward the pickup, which had stopped just behind the Nova.

[¶ 4] At that point, Poulliot told the driver of the Sunbird, which was behind the other two vehicles, to pull up alongside them. Poulliot rolled down the passenger-side window and raised his rifle as the Sunbird drove forward. He then shot Mullen in the face from a distance of a few feet or less. Poulliot's group fled the scene. Soon thereafter, Poulliot boasted to his friends about his exploit. Although Mullen survived the gunshot, he never regained consciousness and remains in a persistent vegetative state.

[¶ 5] The State brought a juvenile petition charging Poulliot with attempted murder. The Juvenile Court waived jurisdiction and bound him over to the Superior Court. A grand jury indicted Poulliot for attempted murder and aggravated assault. Thereafter, a jury found Poulliot guilty of aggravated assault, but deadlocked on the attempted murder charge. After a retrial on the attempted murder charge, the second jury found him guilty.

## I. BIND–OVER

[¶ 6] To bind a juvenile over for trial as an adult, the Juvenile Court must find: (1) probable cause to believe the juvenile committed a Class A, B, or C crime; and (2) by a preponderance of the evidence, that it is appropriate to prosecute him as an adult. *See* 15 M.R.S.A. § 3101(4)(E) (Supp.1993). We review the probable cause determination for clear error, *see State v. Sanborn,* 644 A.2d 475, 478 (Me.1994), and the determination of appropriateness for abuse of discretion, errors of law, or clear error in subsidiary factual findings. *See State v. Rosado,* 669 A.2d 180, 183 (Me.1996); *State v. Williams,* 653 A.2d 902, 906 (Me.1995). During a lengthy hearing, the Juvenile Court heard ample evidence suggesting Poulliot

had intended to kill Aaron Mullen. The court's finding that probable cause existed to believe Poulliot had committed attempted murder was not clearly erroneous.

[¶ 7] In deciding that it was appropriate to try Poulliot as an adult, the court properly considered "the seriousness of the crime, the characteristics of the juvenile, and the dispositional alternatives available to the Juvenile Court." 15 M.R.S.A. § 3101(4)(E)(2). The seriousness of attempted murder is undisputed. Poulliot's most notable characteristics, as multiple witnesses portrayed them, included: (1) a tendency to violent anger when challenged; (2) a thoroughgoing arrogance and egocentricity; and (3) a complete lack of empathy or remorse. The available juvenile disposition was a commitment to the Maine Youth Center until Poulliot's twenty-first birthday. The court found, with ample support in the record, that this disposition would neither rehabilitate Poulliot nor deter him from future criminal conduct. On those facts, the Juvenile Court did not exceed the bounds of its discretion in concluding it was appropriate to try Poulliot as an adult.

## II. EXPERT TESTIMONY

[¶ 8] During the first trial the Superior Court excluded the proposed testimony of Poulliot's expert, psychologist Dr. Brian Rines, after concluding pursuant to M.R. Evid. 702 [3] that his testimony would not be helpful to the jury. We review that exclusion for abuse of discretion or clear error. *See State v. MacDonald,* 1998 ME 212, ¶ 7, 718 A.2d 195, 198.

[¶ 9] Dr. Rines would have testified regarding the "fight-or-flight response" and the "weapons focus effect," two psychological reactions that people in highly stressful situations experience. On voir dire, Dr. Rines explained that those two reactions are normal conditions of the mind that can lead to poor judgment under stress, rather than abnormal conditions sufficient to negate the

---

3. M.R. Evid. 702 provides:
   **RULE 702. TESTIMONY BY EXPERTS**
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

culpable state of mind pursuant to 17–A M.R.S.A. § 38 (1983).

[¶ 10] Poulliot argues that Dr. Rines's testimony would have been helpful to the jury because it suggested that he did not act intentionally or recklessly when he shot Aaron Mullen. Primarily, Poulliot argues that if the jurors believed his testimony that he intended merely to shoot out the tires of the Nova, rather than at Mullen's face, they could have found that his action was not reckless (i.e., a "gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation," 17–A M.R.S.A. § 35(3)(C) (1983)), because he was acting pursuant to a universal psychological response. However, Dr. Rines testified on voir dire that the fight-or-flight response and weapons focus effect do not preclude a person from acting intentionally, knowingly, or recklessly; instead, he said, "it may just be real dumb what they do. Real poor judgment." Given that testimony, "the court could reasonably have concluded that this testimony would do little more than reinforce a concept already well within the jurors' grasps," that people in stressful situations frequently use poor judgment. *State* v. *MacDonald,* 1998 ME 212, ¶ 10, 718 A.2d at 198. The trial court did not err or abuse its discretion in excluding Dr. Rines's testimony.

### III. DOUBLE JEOPARDY

[¶ 11] Poulliot objected to his retrial for attempted murder on double jeopardy grounds. He argues that, because the charge involved the "same conduct" as his aggravated assault conviction, the second trial constituted an impermissible "second prosecution for the same offense after conviction." *State v. Savard,* 659 A.2d 1265, 1266 (Me.1995). His argument is without merit. In considering a double jeopardy claim, the issue is not whether the two offenses involve the "same conduct," but rather whether "a conviction pursuant to each [statutory] provision requires proof of a factual element that the other did not." *State v. Fairfield,* 644 A.2d 1052, 1054 (Me.1994). That test is met here; aggravated assault requires proof of bodily injury, and attempted murder does not; attempted murder requires proof of in-

tent to kill, and aggravated assault does not. *See* 17–A M.R.S.A. §§ 152(1), 201(1)(A), 208(1). Poulliot's retrial did not violate his double jeopardy rights.

### IV. JURY INSTRUCTIONS

[¶ 12] During both trials, the court refused Poulliot's request that the jury be instructed on adequate provocation as an affirmative defense to attempted murder. Adequate provocation is an affirmative defense to *murder,* and has the effect of reducing that crime to manslaughter. *See* 17–A M.R.S.A. §§ 201(3)–(5), 203(1)(B) (Supp. 1998). Nothing in our criminal code, however, suggests that that defense is available for *attempted murder.* Indeed, the plain language of the statute dictates that such a defense is unavailable: "Nothing contained in subsection 3," which defines adequate provocation as an affirmative defense to murder, "may constitute a defense to a prosecution for, or preclude conviction of, manslaughter *or any other crime." Id.* § 201(5) (emphasis added).

[¶ 13] In addition, recognition of an adequate provocation defense to attempted murder would have a drastic result. Under our criminal code, there is no crime of attempted manslaughter to which attempted murder could be reduced. *See State v. Huff,* 469 A.2d 1251, 1253 (Me.1984). It makes no sense to suggest that an attempted murder defendant who established the affirmative defense of adequate provocation could be convicted of the lesser included offense of attempted aggravated assault, thereby reducing a Class A crime punishable by up to forty years imprisonment to a Class C crime punishable by no more than five years. *See State v. Howard,* 405 A.2d 206, 212 n. 6 (Me.1979). We cannot presume that the Legislature intended such a result, especially in light of the recent statutory amendment (which does not apply in this case), pursuant to which a court's finding of adequate provocation limits an attempted murder sentence to *no more than* forty years, with a life sentence possible under other circumstances. *See* P.L.1995, c. 422, § 1 (codified at 17–A M.R.S.A. § 152(4) (Supp.1998)). The trial

court did not err in refusing to instruct the jury on adequate provocation.

[¶ 14] Poulliot also raises several other objections to the jury instructions, although he failed to raise them before the trial court. We review for obvious error, *see State v. Shulikov*, 1998 ME 111, ¶ 7, 712 A.2d 504, 507, and we find none.

## V. SUFFICIENCY OF THE EVIDENCE

[¶ 15] Finally, Poulliot contends that the evidence was insufficient to convict him of attempted murder. In considering that contention, we view the evidence in the light most favorable to the State and ask whether the jury could rationally have found beyond a reasonable doubt every element of the offense charged. *See State v. Cooper*, 617 A.2d 1011, 1015 (Me.1992). The only element at issue here is intent, since there is no dispute that shooting Aaron Mullen constituted a "substantial step" toward the commission of murder. 17–A M.R.S.A. §§ 152(1), 201(1)(A). The question for the jury was whether Poulliot had the "conscious object" of killing Mullen. *Id.* § 35(1)(A) (1983).

[¶ 16] Poulliot testified that he did not intend to shoot Mullen. He claimed that he intended to shoot out the tires of Mullen's car, but that the gun just "went off." The jury could well have found it implausible that an experienced hunter armed with a properly functioning rifle could intend to shoot at a tire and yet wind up shooting an approximately six-foot-tall man in the face. In addition, several witnesses provided testimony concerning Poulliot's statements before and after the shooting, from which the jury could reasonably have inferred that he intended to kill Mullen. On that basis, a jury could rationally have found every element of attempted murder beyond a reasonable doubt.

The entry is:

Judgments affirmed.

