**Sally Pistorio MCGRATH and John McGrath, Plaintiffs,**

v.

**NASSAU COUNTY HEALTH CARE CORPORATION and Eric Rosenblum, Defendants.**

**No. 00–CV–6454 (TCP)(WDW).**

United States District Court, E.D. New York.

Nov. 30, 2001.

---

Steven I. Locke, Carabba Locke, LLP, New York City, for Plaintiffs.

Brian Clark, Clifton, Budd & DeMaria, LLP, New York City, for Nassau Health Care Corp.

Ann Moscow, Epstein, Becker & Green, P.C., New York City, for Eric Rosenblum.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant Nassau Health Care Corporation ("NHCC") objects pursuant to Rule 72(a) of the Federal Rules of Civil Procedure to an Order entered by Magistrate Judge Wall on September 28, 2001 ("September 28th Order") directing NHCC to produce documents related to an internal investigation conducted by NHCC following allegations of sexual harassment made by one of NHCC's female employees. For the reasons stated below, NHCC's objection is overruled.

## BACKGROUND

### A. Claims

The present Objection stems from a discovery dispute that arose in Sally Pistorio McGrath's ("McGrath") and John McGrath's action against NHCC and the former chairman of its board of directors, Eric Rosenblum ("Rosenblum"). Plaintiffs allege that Rosenblum sexually harassed McGrath through a litany of lewd activities and untoward statements, and that NHCC negligently permitted Rosenblum to continue those practices by not terminating him. Specifically, Plaintiffs assert Title VII hostile work environment claims, claims brought under § 1983, New York Human Rights Law claims, assault and battery, negligence, intentional infliction of emotional distress and loss of services. (Am.Compl.¶¶ 87–113.)

## B.  Factual Background

McGrath commenced full-time employment with NHCC in September 1999. (Am. Compl.¶ 21.) She alleges that Rosenblum sexually harassed her over the next few months by passing lewd remarks to her, inappropriately touching her and eventually giving her a note containing an indecent direction. This alleged harassment ultimately came to the attention of members of NHCC's senior management.

On July 20, 2000, McGrath met with NHCC's chief operating officer ("C.O.O."), Jerrold Newman, and general counsel Lou Savenetti at their request to discuss Rosenblum's alleged misconduct. (Am. Compl. ¶ 71; Defs.' Obj. to Mag. J.'s Order of 9/28/01 at 2.) At this meeting, McGrath disclosed Rosenblum's alleged sexually harassment.

The next day, on July 21, 2000, McGrath again met with NHCC officials. (Am. Compl. ¶ 77; Defs.' Obj. to Mag. J.'s Order of 9/28/01 at 2). At that meeting, NHCC officials obtained McGrath's permission to reassign her to a new department so that she would be segregated from Rosenblum. (Am. Compl. ¶ 77; Defs.' Obj. to Mag. J.'s Order of 9/28/01 at 2.) Four days later, on July 25, 2000, McGrath filed an EEOC complaint. *McGrath v. Nassau Health Care Corp.*, No. 00–CV–6454, 1 (E.D.N.Y. Sept. 28, 2001) (order compelling disclosure of investigative documents).

Shortly after McGrath met with NHCC's C.O.O. and general counsel, but before McGrath filed her EEOC complaint, NHCC commenced an internal investigation into McGrath's claims through its outside counsel, Amy Ventry ("Ventry") of Nixon Peabody, L.L.P. (Pls.' Resp. to Defs.' Obj. to Mag. J.'s Order of 9/28/01 at 2.) Ventry's investigation continued until some time in September of 2000. *McGrath,* No. 00–CV–6454, 2 (order compelling disclosure of investigative documents). Following completion of the investigation, Rosenblum was removed as chairman of the NHCC board of directors, but remained a member of the board. (Am. Compl.¶ 76.)

On October 30, 2000, Plaintiffs filed a Complaint.[1] On August 3, 2001, Plaintiffs wrote a letter brief seeking the production of various documents pertaining to NHCC's internal investigation of McGrath's allegations. (Defs.' Obj. to Mag. J.'s Order of 9/28/01 Ex. 2). Defendants wrote a responsive letter brief on August 14, 2001 opposing Plaintiffs' letter of August 3, 2001, and suggested that Magistrate Judge Wall inspect the documents Plaintiffs sought *in camera*. (Defs.' Obj. to Mag. J.'s Order of 9/28/01 Ex. 3.)

On September 26, 2001, Magistrate Judge Wall heard oral argument on Plaintiffs' Motion to Compel Disclosure. (Defs.' Obj. to Mag. J.'s Order of 9/28/01 at 2.) Two days later, Magistrate Judge Wall issued the September 28th Order directing Defendants to produce Ventry's "reports and notes ...[.]" "Section V of ... Ventry's report ... which was inexplicably deleted from the copy submitted to the court for in camera review ... along with the material apparently deleted from page ten of ... Ventry's report, and any other deleted materials." *McGrath,* No. 00–CV–6454, 5 (order compelling production of investigative documents).

On October 8, 2001, Defendants objected to the September 28th Order. NHCC again contends in its Objection that the documents sought are privileged, that NHCC has not placed the contents of the documents at issue, and that it has therefore not waived any privilege with respect to those documents. NHCC supports that position with an affidavit from Ventry affirming that she conducted her investigation in order to advise NHCC in anticipation of likely litigation to be commenced by McGrath, and that the sought after documents were consequently prepared in anticipation of litigation. (Ventry Aff. ¶¶ 3–4.)

## DISCUSSION

### A.  Standard of Review for Non–Dispositive Pretrial Orders

█ A District Court reviewing a Magistrate Judge's non-dispositive pretrial order may not modify or set aside any part of that order unless it is clearly erroneous or con-

---

1.  This Court granted Plaintiffs leave to file an Amended Complaint on August 30, 2001.

trary to law. FED. R. CIV. P. 72(a); *Mathias v. Jacobs*, 167 F.Supp.2d 606, 621–23 (S.D.N.Y.2001); *In re Health Mgmt.*, 96–CV–0889, 1999 U.S. Dist. LEXIS 22729, *12 (E.D.N.Y. Sept. 28, 1999). Findings are clearly erroneous when the reviewing court is firmly convinced the lower court decided an issue in error. *Lanzo v. City of New York*, No. 96–CV–3242, 1999 WL 1007346, *2–3, 1999 U.S. Dist. LEXIS 16569, at *7–8 (E.D.N.Y. Sept. 21, 1999). This standard imposes a heavy burden on the objecting party, and only permits reversal where the Magistrate Judge abused his discretion. *Mathias*, 167 F.Supp.2d at 621–23; *Lanzo*, 1999 WL 1007346, *3, 1999 U.S. Dist. LEXIS 16569, at *7.

■ Orders requiring the production of allegedly privileged materials are non-dispositive pretrial orders. *See Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 102 (S.D.N.Y.2000). Accordingly, Magistrate Judge Wall's Order must be reviewed under the clearly erroneous or contrary to law standard.

## B.  Privilege and Waiver

### 1.  Attorney–Client Privilege

■ The attorney-client privilege "protects confidential communications made for the purpose of obtaining legal advice." *Vingelli v. United States*, 992 F.2d 449, 454 (2d Cir.1993). The privilege attaches to "confidential communications ... between a client's representative and the client's attorney, between representatives of a client, or between attorneys for a client." *Viacom, Inc. v. Sumitomo Corp. (In re Copper Mkt. Antitrust Litig.)*, 200 F.R.D. 213, 217 (S.D.N.Y.2001). The attorney-client privilege exists because " 'sound legal advice or advocacy serves public ends and ... such advice or advocacy depends upon the lawyer's being fully informed by the client.' " *United States v. Doe (In re Grand Jury Proceedings)*, 219 F.3d 175, 182 (2d Cir.2000) (quoting *In re von Bulow*, 828 F.2d 94, 100 (2d Cir.1987) (internal citations omitted)).

The attorney-client privilege is strictly construed and may be waived where a party affirmatively relies on a privileged communi-

cation to advance a legal position. *Id.* Accordingly, under the fairness doctrine, parties waive the attorney-client privilege by " 'assert[ing] a claim that in fairness requires examination of protected communications.' " *Id.* (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991)); *see Chase Manhattan Bank v. Turner & Newall*, 964 F.2d 159, 163 (2d Cir.1992) (enunciating fairness doctrine).

Whether waiver has occurred is decided on a case by case basis. *In re Grand Jury Proceedings*, 219 F.3d at 183. Moreover, the scope of any waiver is defined by the context of the waiver and the prejudice to the other party that limiting the waiver would cause. *Id.* Therefore, "a more limited form of implied waiver may be appropriate where disclosure occurred in a context that did not greatly prejudice the other party in the litigation." *Id.*

### 2.  Work Product Doctrine

Work product materials are those "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." FED. R. CIV. P. 23(b). The work product privilege exists to provide attorneys with a zone of privacy in which they can formulate and prepare legal strategies without intrusion from opposing counsel. *See United States v. Adlman*, 134 F.3d 1194, 1196–97 (2d Cir.1998). Absent this zone of privacy, attorneys' thoughts, impressions and strategies would remain unwritten to the detriment of both clients and attorneys. *Id.* at 1197.

There are two types of work product: (1) ordinary fact work product; and (2) core work product, consisting of an attorney's mental impressions, conclusions, opinions, or legal theories. *See In re Grand Jury Proceedings*, 219 F.3d at 190. To obtain ordinary fact work product, parties must show: (1) substantial need for the work product; and (2) inability, without undue hardship, to obtain the substantial equivalent another way. FED. R. CIV. P. 23(b); *see Hickman v. Taylor*, 329 U.S. 495, 512, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Adlman*, 134 F.3d at 1196–97. Core work product, which is virtually sacrosanct, remains protected unless the par-

ty seeking disclosure makes a "highly persuasive showing of need . . . ." *United States v. Doe (In re Grand Jury Proceedings)*, 219 F.3d 175, 190 (2d Cir.2000) (quoting *Adlman*, 134 F.3d at 1204); *Adlman*, 134 F.3d at 1204 (suggesting that core work product may never be discoverable).

Materials need not be produced primarily or exclusively to assist at trial to be work product. *Adlman*, 134 F.3d at 1196–97. The party creating the materials must only have done so with the prospect of litigation in mind. *Id.* Moreover, work product protection may attach to documents created prior to the occurrence of events giving rise to litigation if the documents were created with an eye towards expected litigation. *See id.* at 1202. Therefore, documents prepared because of existing or expected litigation are prepared in anticipation of litigation and are afforded work product protection. *Id.* at 1196–97, 1202.

Parties may waive any work product protection by putting the privileged information at issue. *In re Grand Jury Proceedings*, 219 F.3d at 191. Parties waive the work product privilege for certain documents by asserting claims which in fairness require examination of those documents. *Id.* at 182. As in the attorney-client context, fairness and prejudice concerns define the scope of any work product waiver. *Id.* at 192; *Chase Manhattan Bank v. Turner & Newall*, 964 F.2d 159, 163 (2d Cir.1992) (recognizing fairness doctrine).

## C. Title VII and Affirmative Defenses

McGrath has asserted a Title VII hostile work environment claim. Title VII creates a cause of action for hostile work environments when "the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment . . . .'" *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir.1999) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). To establish a hostile work environment claim, plaintiffs must show: (1) objectively severe or pervasive conduct that creates an environment that reasonable persons would perceive

as hostile or abusive; (2) a subjective belief that the environment is hostile or abusive; and (3) that the hostile or abusive conduct targets the plaintiff because of her membership in a protected class. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir.2001); *Brennan*, 192 F.3d at 318.

Employers may be vicariously liable to employees subjected to hostile work environments by supervisors or other persons in positions of authority over them. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). However, employers that have not taken tangible employment action against an employee may affirmatively contest presumptive liability by showing by a preponderance of the evidence that: (1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior . . .[;]" and (2) "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc.*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *see Van Alstyne v. Ackerley Group*, 2001 WL 540379, *3, No. 00–9340, 2001 U.S.App. LEXIS 10588, at *10 (2d Cir. May 1, 2001) (relating that liability is presumptive). This defense will be referred to as the *Faragher–Ellerth* defense.

## D. NHCC's Investigation and At Issue Waiver

■ To the extent that the September 28th Order suggests that employers put any post-harassment investigation conducted at issue simply by invoking the *Faragher–Ellerth* defense, this Court disagrees. Such a proposition would be contrary to controlling Second Circuit law and would eviscerate both the attorney-client privilege and the work product doctrine.

However, this Court concludes that Magistrate Judge Wall did not abuse his discretion by concluding that NHCC put the sufficiency of its investigation at issue in this case. NHCC's position that its adequate remedial measures consisted only of reassigning

McGrath is both suspect and Procrustean when an investigation continued for several months after McGrath's reassignment. This position becomes even less tenable when it appears that Rosenblum was demoted from chairman of the board at a later date because of his conduct towards McGrath.

Moreover, the sufficiency of NHCC's response to McGrath's allegations in light of what it learned from its investigation is at issue, because Rosenblum may have continued intimidating McGrath after she was transferred. Under the circumstances, NHCC's attempt to parse its investigation from the whole of its remedial measures is artificial. Accordingly, the September 28th Order was neither clearly erroneous nor contrary to law in so far as it determined that NHCC had put its internal investigation at issue under these facts.

### E. Scope of the Disclosure

Having determined that NHCC put the sufficiency of its investigation at issue under the facts of this case, the Court must now determine the scope of the waiver under both the attorney-client and the work product privileges. *See United States v. Doe (In re Grand Jury Proceedings)*, 219 F.3d 175, 190 (2d Cir.2000). Specifically, the Court must determine the boundaries of each waiver to determine what documents NHCC must produce. *Id.*

### 1. Attorney–Client Privilege

The scope of the attorney-client privilege waiver is determined on a case by case basis by considering the context of the waiver and the prejudice caused to the other party by permitting partial disclosure of privileged communications. *Id.* at 183. For instance, broad subject matter waiver occurs where one party asserts the advice of counsel as a defense in a judicial setting because the other party would be highly prejudiced by having to defend against an incomplete disclosure of privileged information. *See id.* The factors the Second Circuit has deemed relevant to determine if broad waiver is appropriate include: (1) whether substantive information has been revealed; (2) prejudice to the opposing party caused by partial disclo-

sure; (3) whether partial disclosure would be misleading to a court; (4) fairness; and (5) consistency. *See id.*

More limited waiver is appropriate where disclosure occurs in a context and fashion that does not greatly prejudice the non-disclosing party. *See id.* Factors the Second Circuit has pointed to in determining if limited disclosure is appropriate include: (1) whether the disclosure occurred in an extra-judicial forum; (2) the stage of the litigation in which the disclosure was made; (3) whether the disclosure was made to opposing counsel or the court; (4) whether limited disclosure is prejudicial to the opposing party; and (5) whether disclosure was purposeful or inadvertent. *See id.*

### 2. Work Product Doctrine

The same fairness concerns that govern the scope of the attorney-client privilege waiver guide waiver of the work product privilege. *Id.* at 191. The scope of the work product privilege waiver is determined by considering whether a party has made affirmative and selective use of privileged documents, as well as the underlying purposes for the work product doctrine. *See generally id.* Moreover, core work product must be afforded special protection when determining the scope of the waiver. *See id.* at 191–92; *see also United States v. Adlman*, 134 F.3d 1194, 1204 (2d Cir.1998) (implying that core work product may never be discoverable).

### 3. Application

■ The September 28th Order directs NHCC to produce Ventry's incomplete report to NHCC, her handwritten investigative notes and any sections of her reports that were deleted or redacted. This Court concludes that Magistrate Judge Wall did not abuse his discretion by ordering production of those documents.

First, subject matter waiver of the attorney-client privilege is appropriate under the circumstances. Under the Second Circuit's factors: (1) while NHCC has not revealed any substantive information by invoking the *Faragher–Ellerth* defense; (2) McGrath would be prejudiced by NHCC's invocation

of that defense if she could not assess the full measure of NHCC's response in light of what it learned from its investigation; (3) invocation of the *Faragher–Ellerth* defense would mislead the Court for the same reason; (4) it is unfair to McGrath to allow NHCC to invoke the *Faragher–Ellerth* defense while at the same time protecting the documents NHCC itself has put at issue; and (5) it is inconsistent for NHCC to invoke the *Faragher–Ellerth* defense but to retain the documents necessary to evaluate the sufficiency of its response as required by that defense. *United States v. Doe (In re Grand Jury Proceedings)*, 219 F.3d 175, 183 (2d Cir.2000).

Secondly, while the Court finds the waiver of some core work product difficult to sustain, it agrees that NHCC's invocation of the *Faragher–Ellerth* defense has waived the work product privilege under the facts of this case. By weighing fairness concerns against the purpose of the work product privilege, the Court finds that it would be unjust to allow NHCC to invoke the *Faragher–Ellerth* defense under these facts while allowing it to protect the very documents it relies on to assert that defense.[2] Such a position would be highly prejudicial to McGrath and misleading to the Court.

Accordingly, Magistrate Judge Wall did not abuse his discretion by ordering NHCC to produce Ventry's report, her notes and any sections of her reports that were deleted or redacted, because NHCC put those materials at issue by claiming that its remedial response was sufficient in light of its investigation.

## CONCLUSION

Magistrate Judge Wall did not abuse his discretion by ordering NHCC to produce Ventry's unfinished report, her notes and any sections of her report that were deleted or redacted. Accordingly, NHCC's objection to that Order is overruled, and NHCC must comply with the terms of the September 28th Order forthwith.

SO ORDERED.

2. The court notes that NHCC claims "never [to have] asserted the 'adequacy' of the investigation by outside counsel as a defense with respect to corrective measures." (Defs.' Obj. to Mag. J.'s

## ORDER

WALL, United States Magistrate Judge.

Before the court is a letter motion by the plaintiffs, dated August 3, 2001, to compel the production of documents and information concerning the defendant Nassau Health Care Corporation's (NHCC) internal investigation of Plaintiff Sally McGrath's sexual harassment claims. See Locke Letter. The motion is opposed by NHCC's letter dated August 14, 2001. See Clark Letter. On September 10, 2001, at the request of the court, NHCC submitted the documents at issue for *in camera* review, and the court ordered oral argument, which took place on September 26, 2001. For the reasons set forth below, the plaintiffs' motion to compel is granted.

## BACKGROUND

This lawsuit involves claims of sexual harassment of the plaintiff, Sally McGrath, by defendant Eric Rosenblum. The plaintiffs also claim that NHCC, which employed both McGrath and Rosenblum, negligently permitted Rosenblum to continue his harassment practices. After allegedly hearing reports of McGrath's claims from a third party, representatives of NHCC met with McGrath on July 20 and 21, 2000 to "discuss and implement corrective actions" in response to McGrath's allegations of sexual harassment. See Clark Letter at 1. On July 21, McGrath was reassigned to a new department. On July 25, she filed a charge of discrimination with the EEOC. The privilege log submitted by NHCC suggests that interviews of individuals at NHCC by NHCC's outside counsel, Amy L. Ventry, continued until at least late August 2000. Other investigatory tasks took place in September 2000.

Plaintiff moved to file an Amended Complaint, and the motion was granted by order of District Judge Platt dated August 30, 2001. As of the date of this order, no An-

Order of 9/28/01 at 3.) Nonetheless, the adequacy of its response in light of that investigation is at issue in this case.

swers to the Amended Complaint are reflected in the Court's docketing system.

### DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) allows discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. The information sought by the plaintiffs on this motion is undeniably relevant, but NHCC claims that it is protected from disclosure by the attorney-client and/or work product privileges. Those privileges are not, however, absolute, and the plaintiffs argue that any privilege that may apply has been implicitly waived by virtue of the "at issue waiver" doctrine, where, as here, the adequacy of the internal investigation and the defendant's response to it are at issue. Locke Letter at 2–3.

"Where a litigant asserts a claim that in fairness requires examination of a privileged communication, courts have held the protections of the attorney/client privilege and the work product doctrine implicitly waived." *Worthington v. Endee*, 177 F.R.D. 113, 116 (N.D.N.Y.1998) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991)). The *Worthington* court noted that implicit waiver, also known as "at issue waiver," may include the characteristics of "(1) a litigant asserting a privilege; (2) placing 'at issue' the protected communication through an affirmative act such as a claim of an affirmative defense; and (3) making the protected communication relevant information and necessary to the original claim of the adversary." 177 F.R.D. at 116 (citing *Kidder, Peabody & Co. v. IAG Int'l Acceptance Group*, 1997 WL 272405, at *4 (S.D.N.Y. May 21, 1997) & *Tribune Co. v. Purcigliotti*, 1997 WL 10924, at *6 (S.D.N.Y. Jan.10, 1997)).

Here, the plaintiffs argue that NHCC, like the defendant in *Worthington*, put its internal investigation "at issue" by asserting an affirmative defense of appropriate remedial action. Locke Letter at 2–3. The Fourth Affirmative Defense set forth in NHCC's Answer to the original Complaint states in relevant part that NHCC "is not liable because it exercised reasonable care to prevent and promptly correct any sexually harassing behavior ..." NHCC's Answer at 6. The plaintiffs claim that the investigation was part of the remedial action attempted by NHCC because such an investigation was "mandated by the Hospital's own written policy as part of its procedure for remedying sexual harassment." Locke Letter at 1; Nassau County Medical Center Policy/Procedure Manual, Ex. C to Locke Letter, at 4. The policy requires that "[a]ny supervisor or manager who becomes aware of any possible discrimination or harassment should immediately advise the Hospital Legal Counsel or Director of Human Resources, who shall cause an investigation to occur and remedy any violation found to have occurred."

NHCC, on the other hand, argues that its investigation cannot be considered part of the remedial action because "it did not commence until *after* Mrs. McGrath filed her discrimination charge, and was done in anticipation of litigation." Clark Letter at 2 (emphasis in original). NHCC also claims that "it took immediate corrective measures, agreed to by Mrs. McGrath, *prior* to any investigation conducted into her allegations." Id. (emphasis in original). "In sum," NHCC claims, it "implemented corrective measures in response to Mrs. McGrath's allegations *before* any investigation occurred and the investigation conducted by outside counsel did not start until *after* Mrs. McGrath had filed an EEOC Charge of Discrimination against NHCC." Id. (emphasis in original).

NHCC's argument is not only without legal merit, but includes claims that are simply untrue. NHCC emphatically states that its investigation "did not commence until *after* Mrs. McGrath filed her discrimination charge," on July 25, 2000. Clark Letter at 1–2. However, the "Investigation Report Regarding Allegations Made by Sally Pistorio McGrath Against Eric Rosenblum," prepared by Ms. Ventry and submitted for *in camera* review, expressly states that a decision to conduct the investigation was made on July 24, 2000, and it began on that day, the day *before* Ms. McGrath filed her EEOC charges.

In any event, this court is not convinced that the issue of whether the investigation

commenced the day before the EEOC charge or the day after the EEOC charge is determinative. The issue here is whether the corrective actions taken by NHCC were reasonable in light of what it learned from its investigation. Although the Fourth Affirmative Defense does not expressly allege that the investigation and the remedial acts flowing from it were adequate, that is the only sensible inference to be drawn from NHCC's claim that it "exercised reasonable care to prevent and promptly correct any sexually harassing behavior." Where, as here, an employer defends itself "by relying upon the reasonableness of its response to the victim's allegations, the adequacy of the employer's investigation becomes critical to the issue of liability. The only way that Plaintiff, or the finder of fact, can determine the reasonableness of [the employer's] investigation is through full disclosure of the contents thereof." *Brownell v. Roadway Package Sys., Inc.*, 185 F.R.D. 19, 25 (N.D.N.Y.1999). And, the fact that the employer "chose to enlist its attorney to act with dual purpose does not provide sufficient basis to overcome the unfairness of limiting the information it provides." *Harding v. Dana Transp., Inc.*, 914 F.Supp. 1084, 1099 (D.N.J.1996).

Nor, as noted *supra*, does the date on which McGrath filed her EEOC claim impact the necessity of producing the material. As the court in *Worthington* observed, the defendant's claim that the investigation was not itself a remedial action and does not place "at issue" the report and notes of that investigation rang hollow where the investigation was begun fourteen days after the plaintiff had filed a notice of claim. 177 F.R.D. at 117–18. That court specifically held that "[a]s long as the defendants continue to assert the affirmative defenses that they took effective remedial action and that [the individual defendant's] alleged conduct was not unwelcome, the entire report [of the internal investigation] is 'at issue.'" *Id.* Thus, the court ruled, the defendants implicitly waived any privileges, and the report had to be produced.

The same result is indicated here. The defendants shall produce the report and notes within ten days of the date of this order. The court orders, moreover, that Section V of Ms. Ventry's report, captioned "Eric Rosenblum's Response to Sally McGrath's Allegations," which was inexplicably deleted from the copy submitted to the court for *in camera* review, must be produced, along with the material apparently deleted from page ten of Ms. Ventry's report, and any other deleted materials.

**SO ORDERED:**

Dated: Sept. 28, 2001.