**Pamela DAVIS, Plaintiff,**

v.

**EMERY AIR FREIGHT CORPORATION,**
**Defendant.**

No. 02–228–P–H.

United States District Court,
D. Maine.

Feb. 10, 2003.

Neal F. Pratt, Esq., Verrill & Dana, Portland, ME, for plaintiff.

Peter Bennett, Esq., Frederick B. Finberg, Esq., the Bennett Law Firm, P.A., Portland, MA, Lynn A. Kappelman, Esq., Seyfarth Shaw, Boston, MA, for defendant.

## MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

DAVID M. COHEN, United States Magistrate Judge.

The plaintiff in this action alleging violations of the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq.;* Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* moves to compel production by the defendant of documents which she characterizes as "pertaining to an alleged internal investigation undertaken by Defendant following Plaintiff's first set of allegations of discrimination." Plaintiff's Motion to Compel Disclosure of Defendant's Investigative Materials, etc. ("Motion") (Docket No. 7) at 1. The motion was filed pursuant to leave of court granted during a hearing held by telephone on January 16, 2003 concerning a discovery dispute between the parties. Transcript of Telephonic Discovery Hearing (Docket No. 10) at 13–14. The defendant has produced a privilege log identifying the documents at issue (Exh. A to Motion) and takes the position that all of the documents are protected by the work-product privilege set forth in Fed.R.Civ.P. 26(b)(3). Defendant's Opposition to Plaintiff's Motion to Compel Disclosure of Investigative Materials ("Opposition") (Docket No. 8).

One of the arguments now pressed by the plaintiff was made during oral argument at a hearing held before me on January 3, 2003 regarding a related discovery dispute. Transcript of Discovery and Motion Hearing ("January 3 Tr.") (Docket No. 9) at 21. The defendant has submitted the documents for *in camera* review by the court.

### I. Factual Background

The amended complaint includes the following relevant allegations. The plaintiff has been employed by the defendant since June 12, 1999. First Amended Complaint, etc. (Docket No. 5) ¶ 9. From June 12, 1999 to December 11, 2000 she was assigned to outside sales at the defendant's facility in Portland, Maine. *Id.* ¶ 12. In March 2000 she received a positive evaluation from Lynn Easler, her supervisor. *Id.* ¶ 13. Approximately one week later, the plaintiff told Easler that she was pregnant. *Id.* ¶ 14. The plaintiff alleges that the defendant has discriminated against her unlawfully since she made this statement. *Id.* She alleges that the initial discrimination included "repeated abusive comments about her pregnancy;" being moved from her outside sales position to an inside sales position at the end of August 2000, which reduced her opportunity to earn commissions; being denied in August 2000 the use of a company car during her materni-

ty leave when she had been told in March 2000 that she would have the use of a company car during her leave; and receiving a "substantially worse" performance review on September 5, 2000 due to her pregnancy, as a result of which she did not receive a raise. *Id.* ¶¶ 15–18, 20–23.

On December 6, 2000 the plaintiff filed a charge of discrimination against the defendant with the Maine Human Rights Commission and the Equal Employment Opportunity Commission. *Id.* ¶ 24. When she returned from maternity leave on December 11, 2000 the plaintiff was informed that her job had been eliminated due to company restructuring. *Id.* ¶ 25. A person who was not pregnant was retained in a sales position in Portland. *Id.* ¶ 26. On or about December 12, 2000 the plaintiff was told by the general manager of the defendant's Portsmouth, New Hampshire location that any offer of continued employment with the defendant was contingent on her withdrawing her charge of discrimination. *Id.* ¶¶ 29–30. The plaintiff was transferred to Portsmouth. *Id.* ¶ 37.

The plaintiff was entitled to a bonus check for the fourth quarter of 2000 which was sent to Easler in March 2001 but not provided to the plaintiff until she asked for it in July 2001. *Id.* ¶¶ 32–33. On October 21, 2001 the plaintiff filed an additional charge of discrimination against the defendant with the Maine Human Rights Commission and the Equal Employment Opportunity Commission. *Id.* ¶ 36. The plaintiff alleges that the defendant has continued to discriminate against her unlawfully by (i) refusing to modify schedules to allow the plaintiff contact with a major customer; (ii) offering her a different position with unrealistic response times, withdrawing the offer after the plaintiff had accepted it, and then offering the position again with less attractive terms and conditions; and (iv) monitoring the plaintiff more closely than other similarly-situated employees. *Id.* ¶ 38.

In its answer, the defendant asserts the following affirmative defenses, among others:

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are not actionable because the employment practices and/or decisions challenged in the Complaint are justified by legitimate, non-discriminatory and non-pretextual reasons.

\* \* \* \* \* \*

## SIXTH AFFIRMATIVE DEFENSE

If Plaintiff has suffered damages, such damages were caused by a person or persons for whose conduct Defendant was not and is not legally responsible.

Defendant Energy Air Freight Corporation's Answer to Plaintiff's First Amended Complaint, etc. (Docket No. 6) at 7. These are the affirmative defenses on which the plaintiff bases one of her arguments for disclosure. January 3 Tr. at 19–21; Motion at 8.

## II. Applicable Rule

The parties agree that the defendant's invocation of the work-product privilege in response to the plaintiff's request for the subject documents is based on Fed.R.Civ.P. 26(b)(3), which provides, in relevant part:

[A] party may obtain discovery of document and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney ... or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3). "Our adversarial system of justice cannot function properly unless an attorney is given a zone of privacy within which to prepare the client's case and plan strategy, without undue interference." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014 (1st Cir.1988). This portion of Rule 26 balances the interest of the system in providing lawyers with a

degree of privacy free of unnecessary intrusion by opposing parties against the societal interest in ensuring that all parties obtain knowledge of the relevant facts involved in a dispute. *Id.*

## III. Discussion

 The plaintiff contends that she is entitled to production of the documents at issue because (i) they are essential to the preparation of her case and she cannot obtain the substantial equivalent of these materials by any other means; (ii) she has a statutory right to the documents pursuant to 26 M.R.S.A. § 631; and (iii) the defendant has waived the work-product privilege by putting its internal investigation of her complaint at issue. Motion at 1–2.

I rejected the third of these arguments at the January 3 hearing, January 3 Tr. at 29–32, and the plaintiff has provided me with no reason or authority to change my view. At that time, *id.* at 27, 29, I concluded that the decision in *Harding v. Dana Transp., Inc.,* 914 F.Supp. 1084 (D.N.J.1996), was distinguishable because the affirmative defenses quoted above could not reasonably be construed to constitute a claim that the defendant had conducted an appropriate investigation of the plaintiff's allegations, which was the defense's claim in *Harding,* 914 F.Supp. at 1098–99. It is important to note in this context that the plaintiff specifically seeks "documents pertaining to an alleged internal investigation undertaken by Defendant following Plaintiff's first set of allegations of discrimination," Motion at 1, and any such investigation could only have been undertaken after the plaintiff had filed a complaint with state and federal human rights agencies; according to the complaint, that was the first complaint of any kind filed by the plaintiff. Litigation was at that point already underway, and the adequacy of any investigation that might have taken place at that time could not itself serve as a defense to the plaintiff's charges here.

The plaintiff also cites *McGrath v. Nassau County Health Care Corp.,* 204 F.R.D. 240 (E.D.N.Y.2001), and *Worthington v. Endee,* 177 F.R.D. 113 (N.D.N.Y.1998), in support of this argument. Motion at 8–9. Again, both are distinguishable because the plaintiffs in those cases filed complaints with their employers and each employer specifically sought to defend against the claims in court by asserting that they took prompt and effective remedial measures following notice of the plaintiffs' complaints. *McGrath,* 204 F.R.D. at 242, 245;[1] *Worthington,* 177 F.R.D. at 118. *See also Brownell v. Roadway Package Sys., Inc.,* 185 F.R.D. 19, 25 (N.D.N.Y.1999); *Volpe v. U.S. Airways, Inc.,* 184 F.R.D. 672, 673 (M.D.Fla.1998). The plaintiff is not entitled to production of the documents at issue on the basis of any waiver implied in the assertion of the defendant's third and sixth affirmative defenses.

 The plaintiff's statutory argument is equally unavailing. She contends that "several" of the documents listed in the privilege log "fall within the statutory definition of personnel records," and that the defendant is therefore required by 26 M.R.S.A. § 631 to produce them to her. Motion at 7. The statute provides, in relevant part:

> The employer shall, upon written request from an employee ..., provide the employee ... or duly authorized representative with an opportunity to review and copy the employee's personnel file if the employer has a personnel file for that employee.... For the purpose of this section, a personnel file includes, but is not limited to, any formal or informal employee evaluations and reports relating to the employee's character, credit, work habits, compensation and benefits and nonprivileged medical records or nurses' station notes relating to the employee that the employer has in the employer's possession.

26 M.R.S.A. § 631. The plaintiff argues that the defendant's records of its investigation of

---

1. Also noteworthy is the *McGrath* court's holding that the proposition that "employers put any post-harassment investigation conducted at issue simply by invoking the *Faragher* [*v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ]-[*Burlington Indus., Inc. v.*] *Ellerth* [, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ] defense ... would ... eviscerate both the attorney-client privilege and the work product doctrine." 204 F.R.D. at 244. That is essentially the argument that the plaintiff is making here.

the charges she filed with the state and federal agencies must pertain to her work habits and thus must be produced under this statute. Motion at 7. She cites *Harding v. Wal-Mart Stores, Inc.*, 765 A.2d 73 (Me. 2001), in support of this argument. However, the opinion in that case provides no support for her argument. In *Harding*, the plaintiff sought the records of her employer's investigation that led to her termination for "unauthorized removal of company property." 765 A.2d at 74. The Law Court held that "records pertaining to an alleged theft by the employee" fell with the statute's definition of a personnel file as *including reports relating to the employee's character or work habits*. *Id.* at 75. Here, by contrast, any investigation of the plaintiff's claims that other employees of the defendant were discriminating against her based on her gender and pregnancy may well relate to those employees' character or work habits, but would relate to the plaintiff's character and work habits only tangentially, at most.[2] This statute does not require or justify production of the documents sought by the plaintiff.

The plaintiff's remaining argument is that (i) there is a "direct nexus" between the defendant's internal investigation following the filing of her first charge with the state and federal agencies and her filing of the second charge with those agencies, (ii) the records of that investigation are essential to her ability to establish that the defendant's alleged non-discriminatory reasons for its adverse employment actions (presumably any such actions that occurred after the filing of the first charge) are pretextual and to controvert the defendant's affirmative defense that persons other than the defendant are responsible for the plaintiff's damages, (iii) the defendant has provided contradictory and unresponsive reasons for the adverse employment actions and (iv) she can only prove her claim for punitive damages by use of the

investigative materials. Motion at 4–7. In support, she cites two opinions, one of which is unreported, in which the plaintiffs were ordered to produce journals containing contemporaneous records of the events on which they based their discrimination claims.

■ With respect to the first reason proffered by the plaintiff, the fact that the documents sought might be relevant to her claims is not enough under Rule 26(b)(3). *See, e.g., United Kingdom v. United States*, 238 F.3d 1312, 1322 (11th Cir.2001). With respect to the third reason, the plaintiff presents only a conclusory assertion that the defendant has taken contradictory positions or has otherwise been unresponsive to discovery requests. Motion at 5. In the absence of information identifying such contradictions or unresponsive answers to specific discovery requests and how each relates to the documents sought, I am unable to evaluate this assertion and will not consider it further. I do note, however, that other means are available to deal with lack of responsiveness to discovery requests and that the mere fact that a defendant has taken contradictory positions will not necessarily serve to overcome the work-product privilege. To the extent that the case cited by the plaintiff in support of this argument, *Carolan v. New York Tel. Co.*, 1984 WL 368 (S.D.N.Y.1984), concludes that the mere possibility that a contemporaneous statement of a witness may show whether she has altered her version of the facts overcomes the privilege, I find its reasoning unpersuasive.

■ With respect to the second and fourth reasons proffered by the plaintiff, the defendant points out that information sought by the plaintiff may well be available through depositions of the defendant's employees. Opposition at 3–4. The plaintiff does not contend that she has yet taken any such depositions. The plaintiff's suggestion that

**2.** The plaintiff refers specifically to one document and one type of document and speculates that they would contain information pertaining to her character or her compensation and benefits. Motion at 7. I have reviewed *in camera* the "three-page memo regarding Plaintiff" listed in the privilege log, *id.*, and it does not address the plaintiff's character or any other element of the statutory definition. There are no "investigative

documents pertaining [to] Davis' eligibility for the 2000 4th quarter bonus/commission check." *Id.* Any investigation of "Davis' ability to use the company car while on maternity leave" was not conducted to determine her eligibility for such a benefit but rather only to determine what the defendant's other employees did in that regard and why. Such a "report" would not be within the scope or spirit of the statutory definition.

she can only uncover information to impeach the testimony of one or more of the defendant's employees or to prove her claim for punitive damages through production of the investigative materials sought remains pure speculation in the absence of any attempt to obtain such information through available means of discovery.

> We agree with the general proposition that discovery of work product will be denied if a party can obtain the information he seeks by deposition. . . . Plaintiff may however, demonstrate undue hardship if the witness cannot recall the events in question, or is unavailable. But broad unsubstantiated assertions of unavailability or faulty memory are not sufficient. On the record before use, plaintiff has only taken one deposition. We think a more particularized showing must be made before production can be ordered by the district court.

*In re International Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240–41 (5th Cir. 1982) (citations omitted). In *Rexford v. Olczak*, 176 F.R.D. 90 (W.D.N.Y.1997), the other case cited by the plaintiff, the court specifically found that "Defendants have demonstrated their inability to obtain the substantial equivalent of this evidence through interrogatories, deposition, and a claim examination," 176 F.R.D. at 93, before requiring the plaintiff to produce her diary. No such showing has been made by the plaintiff here.

### IV. Conclusion

For the foregoing reasons, the plaintiff's motion to compel (Docket No. 7) is **DENIED**.