**LIBERTY MUTUAL INSURANCE COMPANY and Sanborn's Motor Express**

v.

**Leland WEEKS and Mildred Weeks.**

Supreme Judicial Court of Maine.

Aug. 21, 1979.

Norman & Hanson by Robert F. Hanson (orally), Stephen Hessert, Portland, for plaintiffs.·

Berman, Berman & Simmons, P. A. by Paul F. Macri (orally), Jack H. Simmons, Lewiston, for defendants.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

This appeal arises from an action brought in the Superior Court (Cumberland County) by Liberty Mutual Insurance Company and Sanborn's Motor Express against Leland Weeks and his wife, Mildred, as the defendants, seeking a declaratory adjudication regarding the extent of the lien created by 39 M.R.S.A. § 68 (1978).

That statutory provision secures the right of the employer, or its insurance carrier,[1] liable for compensation benefits[2] to an injured worker[3] under our Workers' Compensation Act (39 M.R.S.A. § 1 et seq.) to share in any proceeds of an action brought by the worker against "the third person liable for the injury." The appeal

---

1. In the present circumstances we may treat the employer and its insurance carrier as "one." See 39 M.R.S.A. § 2.6 (1978); Buzynski v. Knox County, 159 Me. 52, 53–54, 188 A.2d 270 (1963); White's Case, 126 Me. 105, 107, 136 A. 455 (1927). For ease of reference we use the term "carrier."

2. The Act distinguishes various liabilities of the carrier, such as medical services, compensation payments, death benefits, and burial expenses. See, e. g., 39 M.R.S.A. §§ 52, 54–55, 58–59 (1978). Since we are concerned here with statutory liabilities of the carrier as juxtaposed against the common law liability of a third person, we group the carrier's liabilities under the generic term "compensation benefits."

3. The term "injured employee" in the context of Section 68 includes any other person authorized to bring an action against a third person as a "compensation beneficiary." For ease of reference we use simply "worker."

brought by the defendants presents the single question [4] whether the lien guarantees the carrier reimbursement of compensation (for which liability had been incurred) paid after the termination, by settlement or judgment for the worker, of the action against the third person.[5] The judgment of the Superior Court decided this issue in the affirmative, holding that the carrier's lien extended to entitle the carrier not only to recoup postsettlement compensation payments already made but also to set off any future compensation payments for the liability incurred, until the amount so credited to the carrier should equal the worker's net recovery from the third party. Defendants contend that in so deciding, the Superior Court misconceived the law.

Our conclusion is that the Superior Court's decision was correct. We deny the appeal.

In November of 1972 Leland Weeks was operating a tractor-trailer rig for his employer, Sanborn's Motor Express, which collided with another vehicle. By February of 1973, Weeks and Liberty Mutual (the carrier) had entered into an approved agreement for the payment of weekly compensation benefits. These weekly payments were made at least until (and the record suggests perhaps beyond) the issuance of the Superior Court's judgment in the present action. Meanwhile, in September of 1974, the injured worker, and his wife Mildred, instituted an action against Currier Leasing, Inc., and William Kelley, the owner and operator, respectively, of the other vehicle involved in the collision. Included in the complaint was a count alleging that the negligence of Currier and Kelley had deprived Mrs. Weeks of her husband's companionship.

In December of 1975 Mr. and Mrs. Weeks settled their claims against Currier and Kelley for $70,664.07. By the time of settlement the carrier had expended on Leland Weeks' behalf a total of $17,147.73 in compensation benefits. It was repaid for this outlay, less its proportionate share of the attorney's fees, see 39 M.R.S.A. § 68 (1978), and realized a net reimbursement of $11,431.82. From the remainder of the settlement amount the rest of the attorney's fee, as well as $664.07 for expenses, were subtracted, leaving $35,235.18 as the net proceeds inuring for the benefit of Mr. and Mrs. Weeks. The dispute regarding this amount, as a remaining fund, is responsible for the bringing of the instant action for declaratory judgment.

As the defendants in the action, Mr. and Mrs. Weeks have taken the position that

---

**4.** Defendants also asked the Superior Court to rule that those portions of the recovery from the third person allocable to pain and suffering and loss of consortium would be outside the reach of the Section 68 lien. The Superior Court's "Decision and Order" explicitly refused to rule with regard to loss of consortium (as to which the parties had stipulated $1.00 [one dollar] of the third-person recovery was properly allocable to Mrs. Weeks for loss of consortium). Moreover, we take the Superior Court's silence as to the pain and suffering issue as an implicit refusal to consider it, no amount having been designated as to it. The Superior Court concluded that to rule upon the "nominal" damages for loss of consortium (and, it would seem, indeterminate or non-existent damages for pain and suffering) would be to render an advisory opinion.

We have on several occasions emphasized that, despite their anticipatory character, declaratory judgments are not to be entertained in the absence of, among other factors, a "real controversy." *See, e. g., Chandler v. Dubey,*

Me., 378 A.2d 1096, 1099 (1977) (citing cases); *Shapiro Bros. Shoe Co. Inc. v. Lewiston-Auburn, S.P.A.,* Me., 320 A.2d 247, 251 n.7 (1974) (citing cases). The difficult determination whether a controversy is sufficiently "real" to escape the prohibition against rendering advisory opinions except as constitutionally mandated, *see* Me. Const. art. VI, § 3, is a matter for the sound discretion of the trial court upon consideration of the individual circumstances of each case. *Jones v. Maine State Highway Commission,* Me., 238 A.2d 226, 228–29 (1968). Here, we see no reason to differ with the Superior Court's refusal to adjudicate as to the "loss of consortium" and the "pain and suffering" issues.

**5.** The "thorny issue" whether the carrier enjoys a continuing lien has also been referred to by us as whether the carrier may suspend post-recovery payments pursuant to a "claimed right of set-off." See *Mullen v. Brown Homes, Inc.,* Me., 358 A.2d 557, 560 n.3, 561 (1976).

the statute governing the distribution of proceeds from recoveries against third persons specially limits the extent of a carrier's lien where, as here, the injured worker has initiated the tort action against the third person. Defendants point to the third and fourth paragraphs of Section 68 in which the Legislature expressly differentiates the action brought by the worker from that brought by the employer or carrier. By making this distinction, defendants argue, the Legislature has indicated differing measures of protection for the carrier, and this point is highlighted, say defendants, by the following language, more particularly the portions we have marked with emphasis:

"If the employ*ee* or compensation beneficiary recovers damages from a third person, he shall repay to the employer or compensation insurer, out of the recovery against the third person, *the benefits paid to him by the employer or compensation insurer under this Act* . . ..

"If the employ*er* or compensation insurer shall recover from a third person damages in excess of the compensation and *benefits so paid or for which he has thus become liable*, then any such excess shall be paid to the injured employee . ..." (emphasis added)

Defendants contend that where the worker has brought the action against the third person the carrier's lien cannot be a "continuing" lien. This is so, maintain defendants, because of the allegedly critical difference in the statutory language applicable where the *carrier* has proceeded against the third person; then, the carrier is guaranteed the right to retain amounts equal not only to "benefits . . . paid" but also to those for which the carrier has "become liable." That language, however, is absent in the statute's dealing with the duty of the "employee" who has proceeded against the third person; there the language requires only that the worker "repay . . . the benefits paid . . .." Defendants contend that the Legislature may be taken to

have had a sound reason for thus differentiating the extent of the carrier's lien depending on whether the worker or carrier had brought the common law suit: arguably, the intendment was to confer a benefit upon the party who undertook the burden of bringing the action against the third person tortfeasor, as a reward to that party for his help in furthering the compensation system's goals of making whole the worker and carrier "injured" by a third person's tortious conduct.

We reject defendants' proffered interpretation of the statute. We believe it does violence to the legislative language, defeats the goals to be served by the scheme of utilizing the third person tortfeasor for the benefit of the worker's compensation system, and distorts the otherwise straightforward structure designed to implement those goals.

Despite defendants' repeated emphasis upon particular discrete phrases as plainly indicating, according to defendants, legislative intendment, we cannot fairly say that Section 68 *plainly* establishes *anything* about the extent of the lien it creates. We conclude, rather, that we must approach the interpretation of the statute with the basic point uppermost in mind that the current lien provisions are the product of a somewhat disparate superimposition, during more than half a century, of one layer of language upon another. Such a process tends to engender ambiguities, if not inconsistencies, and we can achieve clear perception of the legislatively intended dimensions of the carrier's lien only by an approach that infuses the words used by the Legislature with the spirit of the basic principles that have always governed the utilization of the tort liability of third persons as one of the cornerstones of the worker's compensation system.

We begin analysis by quoting in their entirety the current statutory provisions concerning the tort liability of third persons in relation to the worker's compensation system.

"§ *68. Liability of third persons; election of employee; subrogation*

"When an injury or death for which compensation or medical benefits are payable under this Act shall have been sustained under circumstances creating in some person other than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim such compensation and benefits or obtain damages from or proceed at law against such other person to recover damages.

"If the injured employee elects to claim compensation and benefits under this Act, any employer having paid such compensation or benefits or having become liable therefor under any decree or approved agreement shall have a lien for the value of compensation paid on any damages subsequently recovered against the third person liable for the injury. If the employee or compensation beneficiary fails to pursue his remedy against the third party within 30 days after written demand by an employer or compensation insurer in interest, the employer or compensation insurer shall be subrogated to the rights of the injured employee and shall be entitled to enforce liability in their own name or in the name of the injured party; the accounting for the proceeds to be made on the basis provided.

"If the employee or compensation beneficiary recovers damages from a third person, he shall repay to the employer or compensation insurer, out of the recovery against the third person, the benefits paid to him by the employer or compensation insurer under this Act, less said employer's or compensation insurer's proportionate share of cost of collection, including reasonable attorney's fees.

"If the employer or compensation insurer shall recover from a third person dam-ages in excess of the compensation and benefits so paid or for which he has thus become liable, then any such excess shall be paid to the injured employee, less a proportionate share of the expenses and cost of actions or collection, including reasonable attorney's fees. Settlement of such subrogation claims and the distribution of the proceeds therefrom must have the approval of the court wherein the subrogation action is pending or to which it is returnable; or if not in suit, of a single commissioner. When the court in which such subrogation action is pending or to which it is returnable is in vacation, the judge of the court, or, if the action is pending in or returnable to the Superior Court, any Justice of the Superior Court, shall have the power to approve the settlement of such action and the distribution of the proceeds therefrom. The beneficiary shall be entitled to reasonable notice and the opportunity to be present in person or by counsel at the approval proceeding."

In the original form of the Act, propounded in 1915, a worker who had sustained a compensable injury in circumstances giving rise to tort liability on the part of a third person was put to an election: he could either claim the statutory benefits or seek damages from the tortfeasor.[6] If the worker elected compensation, the employer (actually, almost always the employer's insurance carrier) was "subrogated" to the worker's common law rights for purposes of recouping its compensation outlay. Although the worker was barred by his election from bringing an action in his own right, he remained the beneficiary of the carrier's obligation to turn over to him the amount by which the carrier's damage recovery might exceed its compensation liability. *See Donahue v. Thorndike & Hix, Inc.*, 119 Me. 20, 109 A. 187 (1920).

In 1921, the Legislature introduced a "new and radical change." *Foster v. Con-*

---

**6.** R.S., Chap. 50, § 26 is conveniently set out in *Donahue v. Thorndike & Hix, Inc.*, 119 Me. 20, 21, 109 A. 187 (1920).

*gress Square Hotel Co.*, 128 Me. 50, 55, 145 A. 400 (1929). The worker's common law rights were restored to him if the carrier, after written demand, failed to bring within ninety days the action against the third person tortfeasor to which it was "subrogated." This change was prompted, no doubt, by the realization of the Legislature that in many instances the carrier, though under a duty to render any excess recovery to the worker, would be dissuaded by the vagaries of the "absurd luxury known as personal injury litigation", *Foster, supra* at 56, 145 A. at 402, from pursuing its remedy; in consequence, the third person tortfeasor would enjoy an unintended, and undesired, immunity and the worker would be unjustly prevented from having a full recovery. *Id.* Although the statute retained the language of election, the amendment engrafted upon it a new route to recovery by its provision that the proceeds of the worker's recovery from the third person be distributed just as if the carrier had brought the action: "the accounting for the proceeds to be made on the basis provided." Thus, it became evident that regardless of which party initiated the suit against the third person tortfeasor, the proceeds were to be distributed in the identical manner.

The scheme retained this form, with insignificant language variation,[7] until it was substantially overhauled by the enactment of P.L.1969, c. 84. Very likely to eliminate the potential for abuse inhering in the opportunity of the carrier to settle its action against the third person merely for an amount approximating its compensation liability, the 1969 legislation gave precedence to the right of the worker to bring the action against the third person and the carrier, in turn, was "compensated" for its loss of control over the proceedings against the third person by being given a lien on any recovery.

Only if the so-called repeal and replacement undertaken in 1969 somehow altered the rights and duties of the parties involved could we agree with defendants' contention that where the worker in fact exercises his precedent right to bring the action against the third person, as in the instant situation, the carrier is afforded a lesser measure of protection by its lien than that authorized where the worker fails to exercise his precedent right and thereby enables the carrier to bring the action against the third person.

That the Legislature contemplated no such different measure of protection to the carrier is indicated in striking manner by the Legislature's almost complete retention of the prior language. The 1969 changes were accomplished by means of key interpolations and a wholesale repositioning of textual blocks (with some minor clarifications and additions immaterial here). With such the case, the retention of prior language seems to us of particular importance. It suggests with some force that the carrier, whose subrogation right under the earlier version attached upon its "having paid such compensation or benefits or having become liable therefor", and whose *eligibility* for the newly-substituted lien rights was identically expressed, was to have its lien *recovery* measured in the same fashion.

Prior to 1969, the "subrogated" carrier bringing the action could retain all proceeds which did not exceed "the compensation and benefits so paid or for which . . . [it] has thus become liable." If the carrier declined to bring the action the worker could proceed, "the accounting for the proceeds to be made on the basis provided."

Under the 1969 statutory approach, giving the worker the right to proceed, first, against the third person and affording the carrier a lien in place of the carrier's former ability to control the action from the outset, the worker is subjected to the obligation to "repay" to the carrier the "benefits paid to him [the worker]." In essence, this is to say that the worker must honor the lien "for the value of compensation paid . . . ." Should the worker not go forward to exercise his precedent right of action against

7. *Compare* 39 M.R.S.A. § 68 (1964) *with* R.S. 1930, Chap. 55, Section 24.

the third person, the carrier which has exercised its deferred right so to proceed must, under the 1969 scheme, account "on the basis provided." The 1969 statute continued the "basis provided" as it had always been, namely, that any damages recovered by the carrier in excess of its compensation liability are to be remitted (after suitable adjustment for expenses, costs, and attorney's fees) to the worker.

If we were to accord the phrases "benefits paid to him" and "value of compensation paid" the meaning for which defendants argue, that is, that each means only such benefits as *have been* paid, as distinguished from benefits which will be paid in the future though such payments will be in discharge of the same past-incurred liability, we would destroy the simple symmetry embodied in the short-hand phrase "on the basis provided." The identity of the two actions, the very essence of the concept of subrogation, *see Travelers Insurance Co. v. Foss*, 124 Me. 399, 130 A. 210 (1925), would be undone, to be replaced with an unseemly rash of quickly-brought and as quickly-settled third-person suits by workers seeking to cut off the carrier's lien.

Defendants' argument that the lien continues to protect the carrier which has been enabled to bring its subrogation action but yet terminates when an action is brought by the worker ignores the plain thrust of granting to a carrier "*having become liable*" for compensation a lien on "compensation paid" (emphasis added). By such language the statute signifies that the lien secures reimbursement of all payments, even those made to satisfy the carrier's periodically-accruing liability after the disposition of the action against the third person, pursuant to the *overall liability* to compensate that must have been established well before the initiation of the action against the third person, when "the injured employee . . . [elected] to claim compensation and benefits under this Act . . ." and the carrier had "become liable therefor . . . ."

Beyond the point that it is difficult to square it with the language of Section 68, defendants' limited lien conception would frustrate the purposes behind the statute. This Court has said that the compensation system's resort to the third person's tort liability, as established by Section 68, aims to give the carrier "total reimbursement out of the proceeds" of any recovery against the third person.[8] The subrogation action expresses this purpose, of course, and prior to 1969 so did the worker's duty to account "on the basis provided", the only "basis provided" having been the carrier's right to retain the proceeds of its action that did not exceed the "benefits . . . for which . . . [it] has . . . become liable." Were we to agree with defendants' contention that the 1969 introduction of the *lien* as the protective device for the carrier introduced a new, and lesser, measure of recovery by the carrier in those instances where the worker exercised the precedent right conferred on him to bring the action against the third person tortfeasor, we would be rendering the lien largely useless where the carrier, having lost control of the action and the accompanying power to achieve a full measure of reimbursement, needs it most.

Adopting that construction would ill serve what we have said to be another "well recognized purpose of the Act, namely, that recovery from a third . . . [person] should be applied against compensation."

8. *Roberts v. American Chain & Cable Co.*, Me., 259 A.2d 43, 47 (1969). The *Roberts* Court also used the phrase "recoupment in full." Id. at 49. Regarding the particular holding of *Roberts*, that this purpose, and others, overcame the equitable doctrine of contribution so as to preclude the third person's impleading of the employer in an effort to compel some sharing of the tort burden, *see* Comment, *New Policies Bearing on the Negligent Employer's Immunity from Loss-Sharing*, 29 Maine L.Rev. 243 (1978).

*Buzynski v. Knox County,* 159 Me. 52, 59, 188 A.2d 270, 274 (1963).[9]

This purpose is fundamental to the entire scheme established by Section 68. Whether the instrument be the lien, the subrogation action, or the requirement that the worker reimburse the carrier from the proceeds of his own action, the ends to be furthered remain the same: the injured worker gains a greater recovery than he can from the compensation system, the carrier is relieved of the compensation burden that another's fault has caused it to shoulder, and an objectionable immunity for the third person tortfeasor is prevented. In order also to prevent the unjust enrichment to the worker that would follow were he permitted to retain both tort damages and compensation payments, the statute prohibits double recovery.

> "The injured employee (as defined in the Act) is not entitled to both compensation from his employer and damages in tort. The third party does not escape his just liability in damages, nor does the injured employee obtain double compensation. Such is the purpose and intent of the Act." *Buzynski, supra* at 56, 188 A.2d at 272.

> "In either event, whether the action is controlled by the compensation carrier or by the . . . [compensation beneficiary], there must be an accounting . . of any proceeds . . . to the end that there shall be no double recovery." *Buzynski, supra* at 60, 188 A.2d at 274.

This simple scheme must be taken to have been well known by the Legislature in 1969. In the absence of any direct indication of legislative intendment to alter it, we decline to introduce the distortion that would result if the worker were permitted to defeat the carrier's lien and retain a double recovery simply because the worker, rather than the carrier, brought the action against the third person. To do so would ascribe to the Legislature intendment to end one abuse, by which the carrier could settle its action to the detriment of the worker, and to replace it with another by which the worker could settle his action to the detriment of the carrier.

The Superior Court correctly adjudged that plaintiff carrier is entitled to reimbursement for compensation payments made to defendants subsequent to the disposition of their action against the third person tortfeasor, and that plaintiff carrier is entitled as well to set off against its liability for future compensation payments the difference between the amount paid as compensation after the disposition of that action and the defendants' net recovery from it of $35,234.18.[10]

The entry is:

Appeal denied.

Judgment affirmed.

McKUSICK, C. J., sat at argument but did not otherwise participate.

---

9. *Cf. Foster, supra,* 159 Me. at 56–57, 145 A. at 402: "The provision for subrogation in the Compensation Act was made for the benefit of the employer and the insurance carrier."

10. Many courts have ruled similarly on the basis of statutes dealing explicitly with the issue. *See* generally 2A Larson *Workmen's Compensation Law* § 74.31 (1976 & Supp. 1979).

> "If the statute does not take pains to deal explicitly with the problem of future benefits, but merely credits the carrier for compensation paid, or compensation for which the carrier is liable, the correct holding is still that the excess of third-party recovery over past compensation actually paid stands as a credit

against future liability of the carrier." *Id.* at 14–220.

*Accord, Richard v. Arsenault,* 349 Mass. 521, 209 N.E.2d 334, 336 (1965); *Richardson v. United States Fid. & Guar. Co.,* 233 Miss. 375, 102 So.2d 368, 371 (1958); *Bilodeau v. Oliver Stores, Inc.,* 116 N.H. 83, 352 A.2d 741, 745 (1976); *Billeaud v. United States Fid. & Guar. Co.,* La.App., 349 So.2d 1379, 1385 (1977); *Brocker Manufacturing & Supply Company, Inc. v. Mashburn,* 17 Md.App. 327, 301 A.2d 501, 507 (1973); *Schalk v. Michigan Sewer Construction Co.,* 62 Mich.App. 658, 233 N.W.2d 825, 827 (1975); *Simonetti v. Munro Waterproofing Co.,* 282 App.Div. 899, 124 N.Y. S.2d 789, 790–91 (1953).