2001 ME 13

**Nancy A. HARDING**

v.

**WAL–MART STORES, INC.**

Supreme Judicial Court of Maine.

Argued Dec. 13, 2000.
Decided Jan. 22, 2001.

Janet T. Mills (orally), Wright & Mills,
P.A., Skowhegan, for plaintiff.

Mark V. Franco (orally), Thompson &
Bowie, Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Wal–Mart Stores, Inc., appeals from the judgment entered in the Superior Court (Penobscot County, *Hjelm, J.*) affirming the judgment entered in the District Court (Newport, *Stitham, J.*) ordering Wal–Mart to disclose to its former employee, Nancy Harding, internal investigative reports relating to an incident which led to the termination of Harding's employment. Wal–Mart contends that the court erred in concluding that internal investigative files are part of an employee's personnel file pursuant to 26 M.R.S.A. § 631 (Supp.2000). We affirm the judgment.

## I. BACKGROUND

[¶ 2] Harding was terminated from her employment at the Palmyra Wal–Mart. The reason given for her termination was the "[u]nauthorized removal of company property." James Bryant, a loss prevention district supervisor for Wal–Mart, had conducted an investigation into an internal loss at the Wal–Mart store in Palmyra. Bryant interviewed several witnesses and obtained statements from them. Bryant also interviewed Harding, who wrote a two-page statement. Based on Bryant's investigation, management of the Palmyra store terminated Harding's employment.

[¶ 3] Bryant is a Wal–Mart employee. After Harding was terminated, Bryant retained the statements and his notes on the investigation in a separate file which he kept in an office located in his home. Pursuant to Wal–Mart policy, Bryant did not put copies of the investigative records in Harding's personnel file.

[¶ 4] After she was discharged, Harding wrote to the store manager explaining her version of the events, but received no response. She then requested, first orally and then in writing, a copy of her personnel file. In her written request, she specifically asked for the documents relating to the investigation. In response, Wal–Mart twice gave her documents which included her evaluations, pay scale, application for employment, and a one-page "Exit Interview" form which simply stated that she was involuntarily terminated for the "unauthorized removal of company property." Wal–Mart did not, however, provide Harding with any of the statements or notes relating to Bryant's investigation.

[¶ 5] Harding then filed this action seeking access to the investigative records pursuant to 26 M.R.S.A. § 631. Although Wal–Mart eventually provided Harding a copy of the statement she had given to Bryant, as well as a copy of the letter she had sent to the store manager after her termination, it did not release to her any other records contained in Bryant's investigative file.

[¶ 6] After a hearing, the District Court held that the investigative records were components of Harding's personnel file pursuant to 26 M.R.S.A. § 631 and that Wal–Mart was required to produce the file at Bryant's request. The court found that Wal–Mart's failure to do so was in bad faith, assessed a civil forfeiture of $500, and required Wal–Mart to reimburse Harding for her reasonable attorney fees.

[¶ 7] Wal–Mart appealed to the Superior Court pursuant to M.R. Civ. P. 76D. The Superior Court affirmed the judgment of the District Court, and Wal–Mart filed this appeal.

## II. DISCUSSION

[¶ 8] We are asked to determine whether an employer's records relating to investigations of allegations of employee wrongdoing are included in the statutory definition of "personnel file" set out at 26 M.R.S.A. § 631. Wal–Mart argues that materials regarding an internal investigation conducted by an employer do not constitute personnel records within the

meaning of the section, first because such records are not identified by name in the language of section 631, and second, because inclusion of investigatory records in personnel files would be contrary to public policy.

## A. Standard of Review

[¶ 9] "When a Superior Court acts in an appellate capacity, we directly review the record of the District Court." *Clum v. Graves*, 1999 ME 77, ¶ 9, 729 A.2d 900, 904. The facts here are not in dispute. The dispute turns on the statutory construction of section 631. "Because statutory construction is a matter of law, we review decisions regarding the meaning of a statute de novo." *Kimball v. Land Use Regulation Comm'n*, 2000 ME 20, ¶ 18, 745 A.2d 387, 392. "When reviewing the construction of a statute, '[w]e look first to the plain meaning of the statutory language as a means of effecting the legislative intent.'" *Home Builders Ass'n v. Town of Eliot*, 2000 ME 82, ¶ 4, 750 A.2d 566, 569 (alteration in original) (quoting *Coker v. City of Lewiston*, 1998 ME 93, ¶ 7, 710 A.2d 909, 910). "If the meaning of this language is plain, we must interpret the statute to mean exactly what it says." *Kimball*, 2000 ME 20, ¶ 18, 745 A.2d at 392 (quotations and citations omitted).

## B. Plain Language

[¶ 10] 26 M.R.S.A. § 631 (Supp.2000) provides in pertinent part,

> For the purpose of this section, a personnel file includes, *but is not limited to*, any formal or informal employee evaluations and reports relating to the employee's *character*, credit, *work habits*, compensation and benefits and nonprivileged medical records or nurses' station notes relating to the employee that the employer has in the employer's possession.

*Id.* (emphasis added).

[¶ 11] Preliminarily, it is noteworthy that the Legislature did not limit documents included in a personnel file to those records physically included within a particular file folder; rather, the language of the statute makes it applicable to any such records "the employer has in the employer's possession." 26 M.R.S.A. § 631; *cf. Miller v. Chico Unified Sch. Dist.*, 24 Cal.3d 703, 157 Cal.Rptr. 72, 597 P.2d 475, 477 (1979) (holding that the school district could not avoid the requirements of a statute allowing employees to comment on any derogatory information placed in their personnel files, by putting derogatory material in another file not designated "personnel file").

[¶ 12] We next note that the Legislature used broad category descriptors rather than an extensive list of specifically designated records to describe the contents of a personnel file. The use of such broad descriptors in this context is both sensible and reasonable. Employment related records may be given many different labels. The records at issue, for example, are referred to by the parties as investigative records. They could as easily have been called "loss prevention records," "internal inquiries," or "employee conduct records." Accordingly, an attempt on the part of the Legislature to identify each type of record by name could become a fruitless pursuit and lead to avoidance of the statute's reach simply by use of inventive labels.

[¶ 13] The question then is whether the records created by Bryant, regardless of where they were kept or what they were labeled, fall within the broad categories of documents enumerated in section 631. The plain language of at least two of the general categories set out in section 631 are designed to encompass such records. Records "relating to the employee's character ... [or] work habits" certainly encompass records pertaining to an alleged theft by the employee. *See* 26 M.R.S.A. § 631.

## C. Public Policy

[¶ 14] Wal–Mart argues nonetheless that there are numerous policy reasons for ignoring the plain language of the statute.

Among them are: (1) ensuring the confidentiality of witness statements and allowing employers the ability to conduct a meaningful investigation; (2) maintaining the confidentiality of records that may be used by law enforcement in later criminal investigations; (3) protecting the employees' interests by maintaining the confidentiality of investigations which, if kept in the personnel files, could be subject to disclosure in a variety of settings such as workers' compensation proceedings and civil actions; and (4) protecting employers from having to disclose potentially defamatory witness statements and notes taken during investigations should the allegations turn out to be baseless. In addition, Wal–Mart asserts that other states with similar statutes have specifically excluded internal investigations from the definition of personnel file.

[¶ 15] Although Wal–Mart articulates reasonable arguments in support of a policy decision exempting certain investigative records from the disclosure requirements of 26 M.R.S.A. § 631, the statute as enacted by the Legislature does not contain such an exemption. It is not our role to second guess the Legislature. The Legislature is the appropriate body for weighing the competing interests at stake.

[¶ 16] Finally, Wal–Mart's argument urging us to accept the wisdom of other states who have created statutory exemptions for investigative records proves too much. If our Legislature also determines that investigative and related records should not be included within the meaning of "personnel file," it may say so. To date it has not. The fact that other legislative bodies have chosen to exempt investigative records from the requirements of similar statutes, however, does not support a construction of the Maine statute as containing an exemption which is not expressly contained in the language of the statute.

[¶ 17] Accordingly, the District Court correctly concluded that the records sought by Harding relate to her "charac-

ter" and "work habits." Such records in the possession of the employer, whether or not they are physically placed in a file labelled "personnel file," are part of the employee's personnel file for purposes of 26 M.R.S.A. § 631.

The entry is:

Judgment affirmed.