*2010 ME 108*

## CONSTRUCTION SERVICES WORKERS' COMPENSATION GROUP SELF INSURANCE TRUST

v.

**Dennis STEVENS et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 10, 2009.
Decided: Oct. 26, 2010.

Arthur J. Greif, Esq. (orally), Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, ME, for Dennis Stevens and Gilbert & Greif, P.A.

James D. Poliquin, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, ME, for Construction Services Workers' Compensation Self Insurance Trust.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, and GORMAN, JJ.

Concurrence: JABAR, J.

LEVY, J.

[¶ 1] Dennis Stevens and Gilbert & Greif, P.A., appeal from a judgment of the Superior Court (Penobscot County, *Anderson, J.*) determining that the Construction Services Workers' Compensation Group Self Insurance Trust (the Trust) was entitled to a workers' compensation lien in the amount of $210,746.22, and that the Trust was not liable for its proportionate share of costs and attorney fees for suspended future workers' compensation payments until those benefits accrue. On appeal, Dennis raises several issues, primarily arguing that the Superior Court erred by failing to reduce the amount of the lien by the Trust's share of attorney fees and costs associated with the present value of the suspended future workers' compensation payments. We vacate the judgment and remand for further proceedings.

## I. BACKGROUND

[¶ 2] Dennis Stevens was employed at Thomas Dicenzo, Inc., when he suffered a work-related injury in April 2002. The

injury was caused by the unexpected explosion of a machine part manufactured by Cedarapids, Inc. Because Thomas Dicenzo, Inc., was a member of the Trust, the Trust began payment of workers' compensation benefits to Dennis in the amount of $459.62 per week. The record suggests that these payments were made voluntarily.

[¶ 3] Dennis brought a product liability suit against Cedarapids, alleging it was liable for his injuries, and his wife Joan asserted a claim for loss of consortium. The Stevenses were represented by the law firm of Gilbert & Greif, P.A. In June 2006, both claims were settled for a total value of $970,000, with 80% attributed to Dennis's damages and 20% attributed to Joan's loss of consortium claim.[1] Pursuant to the terms of a structured settlement, Cedarapids paid Dennis and Joan a lump sum of $452,393.64, with the remaining $517,606.36 being used to fund an annuity that would pay Dennis monthly installments of $2550 for the remainder of his life. The Trust stopped making payments, or went "on holiday," in August 2006 after Dennis received the settlement proceeds.

[¶ 4] In response to the settlement with Cedarapids, the Trust filed suit seeking a judgment declaring that Dennis must pay the Trust the amount of its statutory workers' compensation lien, *see* 39-A M.R.S. § 107 (2009), less the Trust's proportionate share of attorney fees and costs from the settlement proceeds, and that the Trust was entitled to receive the structured settlement payments until the lien was satisfied. The Trust also requested that the court declare that it was not responsible for paying its share of the attorney fees and costs associated with future benefits until the benefits accrue or until a final Board determination of the Trust's

future workers' compensation liability became legally binding.

[¶ 5] Both parties filed motions for summary judgment. In response to the Trust's motion, the Superior Court (*Cuddy, J.*) concluded that there were no issues of material fact regarding the Trust's general right to recover a workers' compensation lien and granted a partial summary judgment for the Trust on that issue but also determined that genuine issues of material fact regarding the amount of the lien would proceed to trial. The court denied Dennis's motion. Following a bench trial, the Superior Court (*Anderson, J.*) issued an order in December 2008 establishing the Trust's lien and ordering that the Trust's share of attorney fees and costs for future suspended workers' compensation payments be paid as the benefits accrue.

[¶ 6] In its decision, the court applied the standard announced in *McKeeman v. Cianbro Corp.*, 2002 ME 144, ¶ 17, 804 A.2d 406, 411, that "an employer's proportionate share of fees and costs upon an employee's settlement with a third party should be calculated with reference both to past benefits paid and future liability relieved, to the extent that it can be determined." The court recognized the difficulty in applying the *McKeeman* standard in this case because the evidence did not establish the extent to which Dennis would be eligible to receive future benefits:

> It is difficult to apply the general rule of *McKeeman* in the present case. While the employer's proportionate share of costs and attorney's fees can include both past benefits paid and future liability relieved, the proportionate share of the future liability relieved is only factored in "to the extent that it can be determined." . . . . The evidence presented at trial was not sufficient to per-

---

1. The Trust was not a direct participant in the settlement.

mit the Court to make this determination because it is not know[n] at this time whether [Dennis] will be eligible to receive future benefits, and if eligible, what the eligibility period will be. Consequently, the only way that the court can determine [the Trust]'s proportionate share of costs and attorney fees related to future liability relieved is to require that [the Trust] pay its share as the benefit accrues periodically. The lien to which the [Trust] is entitled pursuant to section 107 is not reduced by this amount.

[¶ 7] The court determined that the total amount of past benefits paid by the Trust was $340,404.86, and that the Trust was entitled to a lien in that amount less its proportionate share of the attorney fees and costs.[2] The Trust's one-third share of the attorney fees was determined to be $113,468.28, and its proportionate share of the costs was $16,190.36. Subtracting these fees and costs from the total amount of past benefits resulted in a lien in the amount of $210,746.22.

[¶ 8] The court's order also addressed the Trust's assertion that if the funds remaining from the Stevenses' settlement with Cedarapids were not sufficient to satisfy the lien, it should be entitled to receive the periodic payments from the annuitized portion of the settlement:

> The [Trust] also requests that this Court declare that it is entitled to the periodic payments from [the] structured settlement annuity if the funds remaining from Mr. Stevens' settlement with a third party are insufficient to cover the lien. The court is concerned that if it addresses this request it will be exceeding its powers related to declaratory judgment. Because this request could

be viewed as an enforcement action in which debt collection issues could arise, it may properly require additional pleadings or hearing. The [Trust] is entitled to its lien; however, the Court does not at this time order that it be paid from annuity proceeds. Instead, the court requests that the parties confer further in an effort to settle the remaining payment issue. If those issues remain after the expiration of thirty days, either side may request that the court consider the issue and the court will decide whether it can or cannot be resolved on these pleadings, however this request must be made within 45 days, or this Order will constitute a final judgment.

[¶ 9] Because the parties were unable to settle the remaining issue, the court issued a supplemental decision in April 2009 that addressed whether the lien would attach to Dennis's monthly annuity payments. The court found that the $452,393.64 lump sum payment was allocated as follows: "$323,333.33 as [Gilbert & Greif's] attorney's fees, $82,925.08 held in escrow by [Gilbert & Greif], costs of $46,135.23," and that "the only available cash that could be subject to the lien is the escrowed $82,925.08." The court determined that because the lien did not attach to the portion of the third-party settlement attributed to the loss of consortium claim, the lien attached to 80% of the amount held in escrow, and 80% of each annuity payment until the lien is fully satisfied:

> The lien established by the court's order of December 19, 2009 attaches to 80% of all 3rd party settlement proceeds remaining in the possession of Gilbert & Greif, P.A., and to the extent that such proceeds are not sufficient to satisfy the

**2.** This amount represented the sum of the past benefits paid, totaling $334,414.86, and the taxi cab expenses paid by the Trust to transport Dennis to Boston for medical treatment, totaling $5990.

lien in full, the lien attaches to and the [Trust] is entitled to receipt of 80% of each payment from the annuity purchased with the 3rd party settlement proceeds until the lien amount is satisfied in full.

[¶ 10] As contemplated by the court's order, the Trust would continue to issue a check to Dennis for the Trust's attorney fees and costs related to the post-settlement holiday from paying benefits as each benefit payment would have accrued. This would mean that Joan would receive $16,585 from the escrowed lump sum and $510 per month from the annuity payments. Dennis would receive approximately $175 per week from the Trust in attorney fees and costs for as long as he remained entitled to receive workers' compensation benefits but for the settlement. He would not be entitled to any escrowed funds or to receive any annuity payments until the lien is satisfied. This compares to the $459.62 per week Dennis had previously received in workers' compensation benefits. The Trust would receive $66,340.06 from the escrowed lump sum and $2040 per month from the annuity payments, and the lien would be satisfied in about 5.9 years. This appeal followed.[3]

## II. DISCUSSION

■ [¶ 11] Section 107 of the Workers' Compensation Act establishes that if an employer pays or is liable for benefits under the Act, the employer "has a lien for the value of compensation paid on any damages subsequently recovered against the 3rd person liable for the injury." 39–A M.R.S. § 107. Further, if the lien attaches, and "[i]f the employee or the employee's beneficiary recovers damages from a 3rd person, the employee shall repay to the employer, out of the recovery against the 3rd person, the benefits paid by the employer under this Act, less the employer's proportionate share of cost of collection, including reasonable attorney's fees." *Id.* The methods for calculating the compensation lien and the employer's pro rata share of the costs of collection pursuant to 39–A M.R.S. § 107 are matters of statutory interpretation, and thus questions of law that we consider de novo. *See McKeeman,* 2002 ME 144, ¶ 7, 804 A.2d at 408; *Harding v. Wal–Mart Stores, Inc.,* 2001 ME 13, ¶ 9, 765 A.2d 73, 75.

[¶ 12] Dennis contends that the court made several errors in connection with the lien, the most fundamental being its requirement that the Trust pay its proportionate share of attorney fees and costs periodically over time, specifically at the time of the accrual of each benefits payment from which it was relieved by the product liability settlement. Dennis asserts that the Trust should have been required to immediately account for its share of the attorney fees and costs through a reduction of the amount of its lien, with the Trust's proportionate share of costs and attorney fees calculated based on the present value of the future benefits from which it is relieved. He also argues that because the court concluded that it lacked evidence sufficient to determine the Trust's proportionate share of costs and attorney fees on future benefits, the court was compelled to conclude that the Trust failed to meet its burden of proof and should have found that Dennis was entitled to receive benefits indefinitely. Finally, Dennis argues that the court erred because it attached the portion of the lump sum that remained in escrow, which was legally Joan's property due to her loss of consortium award.

---

3.  Joan Stevens has not joined in these proceedings at any stage.

## A. Determination of Future Benefits

[¶ 13] We last considered issues associated with calculation of workers' compensation liens in *McKeeman*, 2002 ME 144, 804 A.2d 406. That case concerned an employee who had died from a work-related accident. *Id.* ¶ 2, 804 A.2d at 407. His widow and their son began receiving workers' compensation death benefits from the employer. *Id.* The widow brought a third-party action against Cianbro Corporation, which resulted in a settlement with a present value of $970,000. *Id.* The employer intervened in the third-party action and moved to enforce its lien pursuant to section 107. *Id.* ¶ 4, 804 A.2d at 408. The trial court established the lien amount based on the statutorily-fixed death benefits that are available to the survivors of an employee who dies from a work related injury.[4] *Id.* ¶ 5, 804 A.2d at 408. The widow's appeal presented the question of how to determine the employer's proportionate share of the costs of settlement for purposes of applying section 107. *Id.* ¶ 6, 804 A.2d at 408. We held: "[A]n employer's proportionate share of fees and costs upon an employee's settlement with a third party should be calculated with reference both to past benefits paid and future liability relieved, *to the extent that it can be determined.*" *Id.* ¶ 17, 804 A.2d at 411 (emphasis added). In a footnote to this sentence, we "recognize [d] that, unlike the definite nature of death benefits payments as in this case, the determination of future liability to employers will often be a difficult process requiring a significant factual inquiry." *Id.* ¶ 17 n. 5, 804 A.2d at 411.

[¶ 14] This case is the kind of difficult case that *McKeeman* anticipated. Although the Superior Court was required to assess the Trust's "future liability relieved," it was provided virtually no reliable evidence by either party with which to do so. Dennis's sole witness was an attorney who practices in the areas of workers' compensation law, social security law, and personal injury law. The court excluded the witness's opinion regarding Dennis's work capacity and the value of the future workers' compensation benefits to which Dennis would be entitled, reasoning that the attorney lacked qualifications to render a disability assessment and to forecast the resulting workers' compensation benefits that might result. The court acted well within its discretion in excluding this opinion testimony. An expert witness's opinion may be excluded under Rule 702 if the court finds that it is not within the expert's specialized knowledge. *State v. MacDonald*, 1998 ME 212, ¶ 7, 718 A.2d 195, 198. Such was the case here.

[¶ 15] The Trust offered no witnesses or exhibits on the issue of the future liability for which it has been relieved as a result of Dennis's settlement with Cedarapids. The record does suggest that the Trust had voluntarily paid benefits to Dennis up until the completion of the settlement, and had petitioned the Workers' Compensation Board to determine Dennis's entitlement to benefits due to its claim that Dennis has refused a bona fide offer of employment. Dennis had contested the petition, denying that he has refused any such bona fide offer. *See* 39–A M.R.S. § 214(1)(A) (2009).[5] The proceeding be-

---

4. In *McKeeman*, 2002 ME 144, ¶ 5, 804 A.2d at 408, the past and future death benefits were easily determined by the Superior Court because, pursuant to section 215, an employer must make death benefits payments to surviving dependents for the defined period of 500 weeks from the date of death. 39–A M.R.S. § 215(1) (2009).

5. Title 39–A M.R.S. § 214(1)(A) (2009) provides:

fore the Board was still pending at the time of the trial in the Superior Court, and the record suggests that it had been stayed at Dennis's request pending the entry of a judgment in the lien action.[6]

[¶ 16] The Superior Court was fully justified in concluding that the evidence before it was insufficient to permit a judicial determination of the Trust's future liability relieved by the settlement. Without a decision by the Board and without evidence presented by either party of the nature and extent of Dennis's entitlement to future benefits in a case in which the employee claims to suffer from permanent incapacity, determining the Trust's future liability relieved was not simply difficult, it was destined to be fruitless. The question remains: what consequences flow from this failure of proof?

## B. Burdens of Production and Proof

[¶ 17] The judicial process imposes burdens of production of evidence and proof so that trial courts and juries will have a body of evidence to draw from and a standard to apply when determining facts and applying the applicable law to those facts. In this declaratory judgment action, the Trust bore the burdens of production and proof to establish the extent of its lien rights under 39–A M.R.S. § 107. As we have previously explained, "In a

declaratory judgment action, the allocation of the burden of proof ... must be determined by reference to the substantive gravamen of the complaint." *Markley v. Semle*, 1998 ME 145, ¶ 5, 713 A.2d 945, 947 (quotation marks omitted). Here, the Trust, as the party affirmatively seeking the protection of the lien statute, properly bore the burden of proof. *See id.*

[¶ 18] Because the Trust did not establish the amount of the future liability from which it had been relieved, it failed in its burden of proof, unless, as *McKeeman* recognized, the court also finds that that amount cannot be reasonably calculated. A determination as to an employee's entitlement to benefits into the future—whether by the parties' agreement, a decision of the Board, or a determination by the court based upon an adequate evidentiary record—is a necessary step to prove the total amount of a workers' compensation lien pursuant to the *McKeeman* analysis. The Trust recognized this, asserting before the court that "[i]t is not possible to make a determination ... without resolving all of the issues that are currently pending before the Board" and that "the Workers' Compensation Board, not the courts, is the appropriate forum for resolution of those issues." The Trust was prevented, however, from satisfying its burdens of production and proof in this case, not because it

---

**1. Benefit determination.** While the incapacity is partial, the employer shall pay the injured employee benefits as follows.
**A.** If an employee receives a bona fide offer of reasonable employment from the previous employer or another employer or through the Bureau of Employment Services and the employee refuses that employment without good and reasonable cause, the employee is considered to have voluntarily withdrawn from the work force and is no longer entitled to any wage loss benefits under this Act during the period of the refusal.

**6.** Dennis attempted to introduce into evidence a copy of his motion to dismiss or stay the petition to terminate benefits, arguing: "I presume that the argument, based upon the trial brief, that [the Trust] is making is that this Court should stay any decision until the later-filed action in the—before the comp commission is resolved. And I think the Court needs to be apprised of the fact that we had moved to stay the workers' comp proceeding, because there's been some forum shopping here." The Superior Court, noting that it "d[idn't] see how this document [was] admissible in this proceeding," denied admission of the exhibit.

was impractical to obtain a decision of the Board, but because the Board proceeding was stayed pending the court's determination of this lien action. The process that resulted from these events had the effect of putting the proverbial cart before the horse.

[¶ 19] As a matter of both judicial economy and basic necessity, we hold that when: (1) the parties disagree as to an employee's entitlement to future benefits; (2) there has been no determination of that question by the Board; and (3) the extent of future liability cannot readily be determined by the court on the record before it, it is essential that the parties obtain a decision from the Board. In such cases, the court should postpone a final determination of the lien claim and require the parties to obtain a decision from the Board, absent good cause not to require one.[7] There is no good cause apparent from the record in this case.

## C. Joan's Loss of Consortium Award

[¶ 20] In addition to the above-stated issues with the Superior Court's judgment, further complications arise from Joan's loss of consortium award. Our law does not attach a workers' compensation lien to the portion of a settlement associated with a loss of consortium claim if that claim was expressly allocated in the settlement agreement. *See Nichols v. Cantara & Sons,* 659 A.2d 258, 260–61 (Me.1995); *Dionne v. Libbey–Owens Ford Co.,* 621 A.2d 414, 417–18 (Me.1993). In this case, the settlement agreement clearly allocates 20% of the total settlement to Joan. Her award, less attorney fees and costs, totals $120,106.28. Dennis correctly notes that this award is her property and cannot legally be subject to the lien. *See Dionne,*

621 A.2d at 418. However, Joan was not joined in this action by any of the parties.

[¶ 21] Title 14 M.R.S. § 5963 (2009) states that when a declaratory judgment action is brought, "all persons shall be made parties who have or claim any interest which would be affected by the declaration and no declaration shall prejudice the rights of persons not parties to the proceeding." *See also Efstathiou v. Payeur,* 456 A.2d 891, 893 (Me.1983) (noting that joinder of all parties who have an interest in a declaratory judgment action is necessary under M.R. Civ. P. 19 to ensure effective and complete adjudication). In this case, Joan's interest was clearly affected by the declaratory judgment issued.

[¶ 22] Although neither the parties nor the court identified this issue, we conclude that the relative rights of the parties should not be determined in Joan's absence. *See Ocwen Fed. Bank, FSB v. Gile,* 2001 ME 120, ¶ 16, 777 A.2d 275, 281 ("Because we may take notice of the absence of a necessary party on our own accord, we need not address whether parties raised the joinder issue themselves.").

[¶ 23] Accordingly, we vacate the declaratory judgment and remand this case for further proceedings. We recognize that the Superior Court's task is complicated by the confused posture of this case resulting from the parties' failure to address the lien before the finalization of the structured settlement. Once a final decision of the Board has been obtained, and Joan has been joined as a party, the Superior Court may receive and consider the Board's decision, and, in its discretion, any additional evidence the parties might offer. The court must then decide whether the Trust's proportionate share of attorney

---

7. Upon a finding of good cause, the court should proceed to decide the case based solely

on the evidence offered by the parties.

fees and costs relative to its future liability relieved can be reasonably determined. If that share can be determined, the court will arrive at a fixed amount for the lien and it must then determine whether the lien can and should be satisfied by existing funds previously received by Dennis and his attorneys, by a *pari passu* approach, as explained in the concurring opinion, or a combination of the two. If that share cannot be determined, a *pari passu* approach would be appropriate.

[¶ 24] Because we vacate the judgment for the reasons we have expressed, we do not address Dennis's remaining claims of error.

The entry is:

Judgment vacated and remanded for further proceedings consistent with this opinion.

JABAR, J., concurring.

[¶ 25] I agree with the Court that we must vacate the Superior Court's judgment, but write separately for two reasons. First, because of the certainty involved in calculating the Trust's lien for benefits already paid, I believe we should provide the parties with a final ruling regarding the court's finding on this issue. Second, obtaining a decision in the pending matter before the Workers' Compensation Board will not assist the court in determining the amount of the Trust's future lien. Because of the inherently speculative nature of the Trust's future lien, I believe a different approach is warranted.

## A. Lien for Benefits Paid

[¶ 26] Calculating the portion of the Trust's lien attributable to benefits paid is a relatively straightforward task. Upon settlement with a third party, 39–A M.R.S. § 107 (2009) entitles the employer to a lien for the "value of compensation paid," and requires the employee to "repay to the employer, out of the recovery against the 3rd person, the benefits paid by the employer under this Act, less the employer's proportionate share of cost of collection, including reasonable attorney's fees." In this case, the Superior Court correctly determined that the Trust was entitled to a lien in the amount of $210,746.22 for benefits paid. Prior to discontinuing payments on August 11, 2006, the Trust had paid Dennis $340,404.86 in workers' compensation benefits.[8] After reducing this amount by the Trust's proportionate share of costs ($16,190.36) and attorney fees ($113,-468.28), the court correctly arrived at the $210,746.22 figure.

[¶ 27] In accordance with section 107's clear mandate, this amount should have been paid to the Trust "out of the recovery against the 3rd person." The law firm failed to do this. After the court determined the amount of the Trust's lien for benefits paid, it should have ordered that amount immediately payable pursuant to section 107. The court erred in attaching the Trust's lien to the escrowed funds and Dennis's annuity payments.

## B. Lien for Future Benefits [9]

[¶ 28] Determining the amount of the Trust's lien for future benefits is a sepa-

---

**8.** The Trust also incurred $5990 in taxicab expenses to transport Dennis to Boston for medical treatment, which were properly included in the lien. *See* Me. W.C.B. Rule, ch. 5, § 13 (2008) (stating that an employer must pay "travel-related expenses" incurred for medical treatment, including "[m]ileage ...

at the standard rate for business travel set by the Internal Revenue Service pursuant to 26 U.S.C.S. § 162(a)(1)" and "[a]ctual charges for tolls").

**9.** The term "future benefits" refers to the benefits to which Dennis may be entitled after August 11, 2006, when the Trust discontinued

rate and distinct process. It is well established that, in addition to a lien on benefits already paid, an employer is entitled "to offset any future liability against the settlement amount netted by the employee." *McKeeman v. Cianbro Corp.*, 2002 ME 144, ¶ 10, 804 A.2d 406, 409 (citing *Liberty Mut. Ins. Co. v. Weeks*, 404 A.2d 1006 (Me.1979)); *accord Overend v. Elan I Corp.*, 441 A.2d 311, 314 (Me.1982). The offset applies to the remaining portion of the settlement, after the Trust's lien for past benefits has been deducted.[10] Absent this offset, the employee would receive both the settlement proceeds and workers' compensation benefits, resulting in a double recovery. *See McKeeman*, 2002 ME 144, ¶ 10, 804 A.2d at 409.

[¶ 29] In return for its right to offset any future liability against the settlement, the employer is responsible for its "proportionate share of cost of collection, including reasonable attorney's fees." 39–A M.R.S. § 107. Although the statute is silent on the method for calculating the employer's proportionate share, we directly addressed this issue in *McKeeman*, reasoning that, "[b]ecause the employer's rights in the settlement include not only past amounts paid, but also future benefits relieved, the employer also has a duty to pay the corresponding proportionate share of attorney fees for the present value of the entire benefit it receives." 2002 ME 144, ¶ 13, 804 A.2d at 410. Thus, we held: "[A]n employer's proportionate share of fees and costs upon an employee's settlement with a third party should be calculated with reference both to past benefits paid and future liability relieved, *to the extent that it can be determined.*" *Id.* ¶ 17, 804 A.2d at 411 (emphasis added).

[¶ 30] Significantly, the trial court in *McKeeman* was able to easily establish the employee's future benefits: the employee had died from a work-related accident, and death benefits available to surviving dependents are statutorily fixed. *Id.* ¶ 2, 804 A.2d at 407; *see also* 39–A M.R.S. § 215(1) (2009). In that sense, the factual situation we faced in *McKeeman* was distinct; courts will not always be presented with a relatively simple calculation of future benefits. Workers' compensation benefits may fluctuate over an employee's life, presenting the potentially difficult task of determining future benefits and corresponding costs of recovery. We explicitly recognized this distinction in *McKeeman*, noting that, "unlike the definite nature of death benefits payments as in this case, the determination of future liability to employers will often be a difficult process requiring a significant factual inquiry." *McKeeman*, 2002 ME 144, ¶ 17 n. 5, 804 A.2d at 411.

[¶ 31] As the Court's opinion today acknowledges, the Superior Court here was faced with the difficult task we anticipated in *McKeeman*. Recognizing that the Trust's future liability relieved could not be determined, the court fashioned a solution:

> The evidence presented at trial was not sufficient to permit the Court to make this determination because it is not know[n] at this time whether the defendant will be eligible to receive future benefits, and if eligible, what the eligibility period will be. Consequently, the only way that the court can determine [the Trust's] proportionate share of costs and attorney fees related to future liability relieved is to require that [the

---

its payment of workers' compensation benefits.

**10.** This offset stands as a credit against the settlement, and does not affect Dennis's obligation to reimburse the Trust for benefits already paid.

Trust] pay its share as the benefit accrues periodically.

This approach was not mentioned in *McKeeman,* but our opinions in both *Overend* and *Weeks*—where the employees' future benefits were not fixed—implicitly recognized the need to determine an employer's proportionate share of costs as the employer receives each credit against its compensation liability. *See Overend,* 441 A.2d at 314; *Weeks,* 404 A.2d at 1013. Although not referred to by name in *Overend* and *Weeks,* this method of reimbursement is commonly called *"pari passu." See Franges v. Gen. Motors Corp.,* 404 Mich. 590, 274 N.W.2d 392, 397 (1979); *see also DiVirgilio v. Norton Co.,* 344 F.Supp. 552, 554 (W.D.Pa.1972).

[¶ 32] In its opinion adopting the *pari passu* approach, the Michigan Supreme Court's decision in *Franges* bears a close resemblance to our discussion of proportionate costs and attorney fees in *McKeeman.* Faced with the issue of "whether the future compensation credit should be included as an interest of the insurer when computing the apportionment of fees," the court in *Franges* surveyed the various approaches taken in other jurisdictions. 274 N.W.2d at 397. Similar to our opinion in *McKeeman,* 2002 ME 144, ¶ 14, 804 A.2d at 410–11, the *Franges* court rejected the approach adopted in Missouri, which holds an employer responsible only for attorney fees based on the amount of compensation already paid. 274 N.W.2d at 397, 400–01. The *Franges* court also identified the dual interests to an employer in any given third-party action by an employee:

First, there is the reimbursement interest: *the refunding of monies previously paid or payable as workers' compensa-*tion benefits as of the date of judgment. Additionally, a second interest appears when the dollar amount of recovery exceeds the insurer's reimbursement. That interest is a dollar amount obtained by the employee but treated by the employer *or insurer as a future credit* against payment of additional compensation benefits.

274 N.W.2d at 400. Again, this analysis parallels our recognition in *McKeeman* that, upon an employee's settlement with a third party, the benefit inuring to the employer "includes *both* reimbursement of amounts paid *and* the relief of future amounts payable to the extent of the settlement amount netted by the employee." 2002 ME 144, ¶ 13, 804 A.2d at 410.

[¶ 33] Unlike *McKeeman,* however, the employees in *Franges* were issued an "open-end" award of workers' compensation benefits, in which compensation was granted "for an indefinite period of time or so long as the facts on which the award was predicated continue." 274 N.W.2d at 394 n. 2.[11] As the *Franges* court observed, in cases where an employee's future benefits are not fixed, the future credit to the employer takes on a contingent quality. *Id.* at 400. An employer may not receive this credit for a variety of reasons, including the employee's medical improvement, retirement, subsequent employment, or death. To properly balance the contingent quality of this interest with the employer's responsibility for bearing the cost of the benefit, the *Franges* court embraced the *pari passu* approach, whereby an employer pays its share of costs and fees as it receives the benefit of the third-party recovery. *Id.* at 397, 400. As the court held, *"payment* of the apportionment per-

---

11. Of the three employees involved in the consolidated appeal in *Franges,* two were entitled to open-ended benefits. *Franges v. Gen. Motors Corp.,* 404 Mich. 590, 274 N.W.2d 392, 395 n. 5 (1979). Because the third employee was deceased, that appeal involved survivor benefits with a fixed dollar amount. *Id.*

centage of total costs based upon gross recovery will be made as this interest of the insurer becomes dollars credited against compensation liability." *Id.* at 400.

[¶ 34] This general approach mirrors the Superior Court's solution and is consistent with Maine law. The Maine Workers' Compensation Act reforms passed in 1992 were based in large part on the Michigan model, *see Guiggey v. Great N. Paper, Inc.,* 1997 ME 232, ¶ 9, 704 A.2d 375, 378, and we have often explored Michigan precedent when our case law does not clearly resolve workers' compensation issues, *see, e.g., Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 589–90 (Me.1996).[12] Accordingly, I would hold that where an employee's future benefits cannot be determined, an employer may pay its proportionate share of the costs and attorney fees attributable to its relief from payment of future benefits as those benefits accrue. *McKeeman* would continue to apply in situations where an employee's future benefits are fixed.

[¶ 35] Adopting the *pari passu* approach in this case would resolve the problem the Superior Court will again struggle with on remand: calculating Dennis's entitlement to future workers' compensation benefits. To be sure, a portion of Dennis's future benefits will be readily calculable. It is undisputed that Dennis was entitled to receive benefits between August 11, 2006, and May 15, 2007, the date the Trust's petition alleges that Dennis refused a bona fide offer of reasonable employment. *See* 39–A M.R.S. § 214(1)(A) (2009). During this period, the benefits

otherwise payable by the Trust stand as a credit against the settlement.

[¶ 36] With regard to Dennis's entitlement to benefits after May 15, 2007, the Board's decision on the Trust's petition will provide the court with retroactive guidance. By statute, an employee who refuses a "bona fide offer of reasonable employment" is not entitled to receive benefits "during the period of the refusal." 39–A M.R.S. § 214(1)(A). Although the Board's decision will determine whether Dennis refused a reasonable employment offer, it will not fix Dennis's entitlement to benefits going forward. In the future, Dennis could return to work or his medical condition could worsen, rendering him unable to physically perform the offered employment. Thus, regardless of the Board's decision, there will be no finality with respect to Dennis's entitlement to future benefits. Obtaining a decision by the Board, as the Court has instructed, will not aid the Superior Court in this regard.

[¶ 37] I think the better course would be to affirmatively adopt the *pari passu* approach. This would bring the litigation surrounding the declaratory judgment action to an end, leaving the parties to deal with Dennis's responsibility for satisfying the Trust's lien for past benefits.

[¶ 38] In sum, I would affirm the Superior Court's determination that the Trust is entitled to a lien for benefits already paid in the amount of $210,746.22. This amount should have been paid to the Trust "out of the recovery against the 3rd person." 39–A M.R.S. § 107. I would, however, vacate that portion of the court's judgment attaching the lien to the es-

---

**12.** Notably, in *Weeks* we cited *Schalk v. Michigan Sewer Construction Co.,* 62 Mich.App. 658, 233 N.W.2d 825 (1975), as representative of the principle that, in dealing with future benefits, "the excess of third-party recovery over past compensation actually paid stands as a credit against future liability of the [workers' compensation] carrier." *Liberty Mut. Ins. Co. v. Weeks,* 404 A.2d 1006, 1013 n. 10 (Me.1979) (quotation marks omitted). *Schalk,* along with two other cases from the Michigan Court of Appeals, were consolidated for purposes of appeal in *Franges. See Franges,* 274 N.W.2d at 394.

crowed funds and Dennis's annuity. Finally, I would affirm the court's general approach regarding future benefits, allowing the Trust to pay its proportionate share of the costs and attorney fees attributable to its relief from payment of future benefits as those benefits accrue.[13]

---

13. Given the resolution of this appeal, I do not set forth a particular formula to be utilized in applying the *pari passu* approach, and therefore do not comment on the correctness of the Superior Court's actual calculation of the Trust's proportionate share of costs and attorney fees.